David Abrams (admitted *pro hac vice*)
dnabrams@wjlf.org
David Abrams, Attorney at Law
Mailing:  PO Box 3353 Church St. Stn. New York, NY 10008
Physical:  5 1/2 Main Street #7, Delhi, NY 13753
Tel. 212-897-5821 Fax 212-897-5811

*counsel for Plaintiff-Relator GNGH2, Inc.*

Dana Moon, Esq. (Bar No. 185154)
wk@moondorsett.com
MOON & DORSETT, PC
445 S. Figueroa Street, Suite 2900
Los Angeles, CA 90010
Telephone: (213) 380-1526

*Attorneys for Defendants*
*XLD CENTURY LLC; XLD GROUP LLC*

UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| United States ex rel. GNGH2, | ) | Case No. 2:22-cv-05514-SB(PVCx) |
| | ) | |
| Plaintiff-Relator, | ) | Hon. Stanley Blumenfeld, Jr. |
| | ) | Courtroom 6 |
| v. | ) | |
| | ) | **Joint Brief Relating to Motion** |
| XLD Century LLC and XLD | ) | **and Cross-Motion for Summary** |
| GROUP LLC, | ) | **Judgment** |
| | ) | Date:  May 3, 2024 |
| Defendants. | ) | Time: 8:30AM |
| _____ | ) | Courtroom: 6 |

# **Table of Contents**

Memorandum of Points and Authorities ........................................................... 1

Introduction ................................................................................................. 1

    Plaintiff's Position ..................................................................................... 1

    Defendant's Position ................................................................................... 2

Facts ........................................................................................................... 4

    Plaintiff's Position ..................................................................................... 4

    Defendant's Position ................................................................................... 7

Argument .................................................................................................... 12

I.     Standard for Summary Judgment ............................................................. 12

    Plaintiff's Position ................................................................................... 12

    Defendant's Position ................................................................................. 13

II.    Elements of a False Claims Act Case ....................................................... 14

    Plaintiff's Position ................................................................................... 14

    Defendant's Position ................................................................................. 14

II(a).  Falsity ................................................................................................. 15

    Plaintiff's Position ................................................................................... 15

    Defendant's Position ................................................................................. 16

II(b).  Scienter ............................................................................................... 19

    Plaintiff's Position ................................................................................... 19

Defendant's Position.................................................................... 21

II(c).  Materiality ............................................................................ 23

Plaintiff's Position ................................................................ 23

Defendant's Position.................................................................... 25

II(d).  Causation ............................................................................. 26

Plaintiff's Position ................................................................ 26

Defendant's Position.................................................................... 27

III.  Damages................................................................................. 27

Plaintiff's Position ................................................................ 27

Defendant's Position.................................................................... 29

IV.  Public Disclosure Bar ........................................................... 29

IV(a). Introduction ........................................................................ 29

Defendant's Position.................................................................... 29

Plaintiff's Position ................................................................ 31

IV(b). Original Source ................................................................... 31

Defendant's Position.................................................................... 31

Plaintiff's Position ................................................................ 31

IV(c). Substantially the Same Allegations.................................... 31

Defendant's Position.................................................................... 31

Plaintiff's Position ................................................................ 35

Conclusion ............................................................................... 36

    Plaintiff's Position ............................................................. 36

    Defendant's Position........................................................... 36

## <u>Table of Authorities</u>

## <u>Cases</u>

*Amphastar Pharms. Inc. v. Aventis Pharma SA*) No. 09-0023, 2012 U.S.
    Dist. LEXIS 162900 (C.D. Cal. Nov. 14, 2012)................................ 32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)  ..................................... 12, 13

*Eastman Kodak Co. v. Image Technical Servs.* (1992) 504 U.S. 451 .......... 13

*Graham County Soil and Water Conservation Dist. v.*
    *U.S. ex rel. Wilson* (2010) 559 U.S. 280............................................. 30

*Hagood v. Sonoma Cnty. Water Agency* (9th Cir. 1996) 81 F.3d 1465......... 32

*Schindler Elevator Corp. v. U.S. ex rel Kirk* (2011) 563 U.S. 401 ........ 30, 32

*U.S. v. Alcan Elec. & Eng'g, Inc.* (9th Cir. 1999) 197 F.3d 1014 ................ 32

*U.S. v. Catholic Healthcare W.* (9th Cir. 2006) 445 F.3d 1147 .................. 30

*U.S. ex rel. Aflatooni v. Kitsap Phys. Serv.* (9th Cir. 2002) 413 F.3d 995 .... 16

*United State ex. rel Doe v. Staples, Inc.* CIV. 08-846 RJL, 2013 WL
    1192982 (D.D.C. Mar. 22, 2013)........................................................ 32

*U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund*
　　(D.D.C. 2012) 843 F. Supp. 2d 20 ....................................................... 32

*United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166
　　(9th Cir. 2006)..................................................................................... 14

*U.S. ex rel. Hixson v. Health Mgmt. Sys. Inc.*
　　(8th Cir. 2010) 613 F. 3d 1186............................................................. 22

*U.S. ex rel. Hong v. Newport Sensors, Inc.*, (C.D. Cal. May 19, 2016)
　　No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246........................... 30

*United States ex rel. Kester v. Novartis Pharmaceuticals Corporation*,
　　43 F. Supp.2d 332 (S.D.N.Y. 2014). ..................................................... 35

*U.S. ex rel. Law Project for Psychiatric Rights v. Matsutani*
　　(D. Alaska Sept. 24, 2010) No. 3:09-CV-0080-TMB, 2010 WL
　　11526903 (*aff'd*, 454 F. App'x 644 (9th Cir. 2011)).....................30-31

*U.S. ex rel Oliver v. Parsons Co.* (9th Cir. 1999) 195 F.3d 457................... 21

*United States ex rel. Schutte v. Supervalu Inc.*,
　　143 S. Ct. 1391 (2023)............................................................... 20, 22

*United States ex. rel Repko v. Guthrie Clinic, P.C.* (3rd Cir. 2012) 2011
　　WL 3875987, aff'd 2012 WL 3104883 ............................................... 32

*United States ex rel. Unite Here v. Cintas Corp.* (N.D.Cal. Dec. 21, 2007)
　　No. C 06-2413 PJH, 2007 WL 4557788............................................. 32

**Statutes and Other Authorities**

15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).......................................... 15, 22

31 U.S.C. § 3729 ...........................................................................*passim*

31 U.S.C. § 3730 ...........................................................................*passim*

28 C.F.R. § 85.3(a)(9); 85.5(d) ............................................................... 27

Fed. R. Civ. P.  36(a)(4) ................................................................... 25

Fed. R. Civ. P. 56(a) ....................................................................... 12

## Memorandum of Points and Authorities

## Introduction

**Plaintiff-Relator's Position:**

This False Claims Act matter presents almost nothing in the way of factual dispute. As set forth in more detail below, the United States paid (and the Defendants received) approximately $4 million in disaster relief under the second-draw PPP disaster relief program. The terms of the second-draw PPP program made applicants ineligible if they were owned out of the People's Republic of China ("PRC") and the application forms required applicants to initial an explicit certification on this issue. There is no dispute that at all times relevant to this matter, (1) the Defendants were ultimately owned by Sichuan Singlida, a PRC real estate company based in the PRC; and (2) that the Defendants' authorized representative was aware of this fact at the time she completed the loan application forms.

As set forth in more detail below, Defendants' position is apparently that (1) the applicable law and loan application language refers to the applicant's subsidiaries, not its parents; and (2) based on this interpretation, the Defendants lacked the requisite scienter to be liable under the False Claims Act. As set forth in more detail below, Plaintiff respectfully submits that both of these arguments fail

as a matter of law. Accordingly, summary judgment should be entered against the Defendants.

Additionally, in connection with the application process, the Defendants' authorized representative affirmatively provided false and misleading information regarding Defendants' ownership, omitting mention of the PRC parent. Moreover, at deposition, the representative provided non-credible testimony about the source of this misinformation. Thus, in the event that the Defendants cross-move for summary judgment, at a minimum there are disputed issues of fact.

**Defendant's Position**

Relator GNGH2 ("Relator")'s contention that Defendants XLD CENTURY, LLC ("XLD CENTURY") and XLD GROUP, LLC ("XLD GROUP") (collectively "Defendants") are liable under False Claims Act ("FCA") 31 U.S.C Section 3729(a)(1)(B)[1] for knowingly providing false information concerning their eligibility in their application SBA Form 2483-SD (1/21) ("Application") for the second-draw Paycheck Protection Program ("PPP") loans fails as a matter of law.

Defendants own certain California Marriott hotels operated by Marriott Management with California employees. It is not disputed that Defendants were

---

[1] "Subject to paragraph (2), any person who –" "(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person." (31 U.S.C Section 3729(a)(1)(B).)

not created in or organized under the laws of China, do not operate in China, or own, or hold any interest in, any Chinese companies. (JAF 62-65.) It is widely known through news media and online sources that Defendants are subsidiaries of a Chinese company. (JAE 6-21.)

The certification at issue ("the Certification") is reasonably read as excluding from eligibility a company that "**owns or holds**" not less than 20% interest in the Chinese company, which "has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong (collectively "China or Chinese"), as shown by the words indicated in bold below:

> **The Applicant is not a business concern or entity** (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or **that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity,** including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

Even assuming arguendo that the Certification is reasonably read as excluding from eligibility those companies that are "**owned or held by**" companies in China, there is simply no evidence that Defendants had subjective knowledge that the Certification contained the language "owned by" or "held by" since the Certification did not contain any such language and actually contained the words "**owns or holds**."

Relator contends that the applicants are "ineligible if they were **owned out of** the People's Republic of China. There are, however, no words in the

Certification that states "**owned out of**." Accordingly, Relator's contention is wholly without merit.

Additionally, even assuming arguendo that the Certification contained the words "**owned** by," or "**owned out of**," rather than "**owns or holds**," Relator has not provided any missing link between the publicly available information and the alleged fraud and is not the original source of the facts alleged in its complaint. (JAF 61.)  Relator's claims therefore fail on this ground as well as a matter of law.

<u>**Facts**</u>

<u>**Plaintiff's Position**</u>

The Defendants in this matter, XLD Group LLC ("XLD Group") and XLD Century LLC ("XLD Century") are California limited liability companies which operate the Torrance Marriott and LAX Marriott respectively.  (JAF 1-4)  In 2021, the Defendants applied for and received disaster relief under the Second Draw PPP program as follows:

| Name | Date | Loan Number | Amount | Forgiven |
|------|------|-------------|--------|----------|
| XLD Century | 3/30/2021 | 2613428708 | $2,000,000 | 12/15/2021 |
| XLD Group | 5/18/2021 | 2870209001 | $2,000,000 | 1/6/2022 |

(JAF 5-6)

The application forms for these loans track the statutory eligibility requirements and require applicants to initial the following certification:

The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or

the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

(the "PRC Certification")

(JAF 7-9)

The Defendants initialed this certification and submitted the forms and as a result they received the disaster relief set forth above.  (JAF 10-17, 54).

At all times relevant to this matter, the Defendants were ultimately owned by a PRC real estate company called Sichuan Singlida.  (JAF 18-28).  The Defendants' authorized representative who completed the forms, Ms. Zhang, was aware of the relationship with Sichuan Singlida but initialed and submitted the forms anyway. (JAF 29-34).

In another section of the application form, applicants are asked to disclose their ownership.  (JAF 35, 40).  In response to this question, Defendants' application forms disclose two individuals and two California entities but does not disclose Sichuan Singlida, the ultimate PRC parent.  (JAF 35-41).  When confronted with these discrepancies at deposition, Ms. Zhang denied that she had put this information into the application form and testified that she did not know

where this information had come from, speculating that it had been inserted "electronically."  (JAF 39).

Further, in connection with one of the loans, Ms. Zhang had an email exchange with the lending bank in which she was asked to disclose the applicant's ownership and was explicitly advised as follows:

> If the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership until it arrives at the Beneficial  Owners (Individual(s)/ Person(s).

(JAF 42-43)

In response, the Defendants' authorized representative provided statements which disclosed some of the requested information, including the individual who ultimately owned Sichuan Singlida, but omitted any mention of Sichuan Singlida itself.  (JAF 44-45).  When confronted with this at deposition, Ms. Zhang was evasive and ultimately speculated that she had not read the instructions.  (JAF 46). Ms. Zhang also testified at deposition that she remains confident that the language at issue applies to subsidiaries and not parents.  (JAF 47).

As a result of the loan transactions, the United States made payments of $2,000,000 for each loan plus an additional $60,000 in processing fees.  (JAF 55-59)  Additionally, the United States made modest interest payments of $12,547.95 in respect of XLD Group's loan and $13,808.22 in respect of XLD Century's loan. (JAF 55-59).

**Defendant's Position**

1.  <u>Relator Mischaracterized "Facts" Regarding Zhang Being Asked About Chinese Parent Company Not Being Listed As An Equity Owner.</u>

Relator's "facts" as stated below mischaracterizes true facts:

> In another section of the application form, **applicants are asked to disclose their ownership**.  (JAF 35, 40).  **In response** to this question, Defendants' application forms disclose two individuals and two California entities but **does not disclose Sichuan Singlida**, the ultimate PRC parent.  (JAF 35-41).  When confronted with **these discrepancies** at deposition, Ms. Zhang denied that she had put **this information** into the application form and testified that she did not know where **this information** had come from, **speculating** that it had been inserted "electronically."  (JAF 39). (emphasis added.)

(1) Defendants were not asked to "***disclose their ownership***." Rather, Defendants were asked to "list all owners of 20% or more of the equity of" Defendants." Sichuan Singlida is not an equity owner of Defendants;

(2) By using the words "***these discrepancies***" and "***this information***," in the order they are stated, Relator leads the reader to assume that Zhang was questioned about Sichuan Singlida not being listed as an owner and that Zhang responded that she did not know why Sichuan Singlida was not listed as the owner. The truth is **Zhang *was not questioned about Sichuan Singlida not being listed as an owner* of "20% or more of the equity of Defendants."** Rather, Zhang was questioned about **her own ownership interest** in Defendants; and

(3) Zhang did not "*speculate*" about the information being inserted electronically. Rather, she testified that she provided requested information to the online portal, but that Zhang did not know why she

was shown in the electronically completed form as the 100% owner, as indicated in the following excerpt from Zhang's deposition transcript.

Q. Okay. You see it says to list all owners of 20 percent or more, right?
A. Uh-hu (affirmative).
Q. And you see it says your name, and **it says that you own a 100 percent**. Do you see that?
A. Yeah. Yes.
Q. That's never been true, has it?
A. I don't - - I didn't fill this form, like this form comes out - - this form comes out, it's like electronically.
Q. All right. So you're saying you don't know who put that information in?
A. Well, I don't - - I don't know.

(53:6-18 (emphasis added).)

Q. Okay. So are you testifying that the bank completed this part of the form for you?
**A.** The system. **I mean the online system, it comes out -- the form is like not the form like with you the first time. We didn't put like I own 100 percent owner of XLD Group. Why would I, I'm not an owner.**
Q. Okay. Is it your testimony that you have no idea where this information came from?
A. I have no idea why this come -- **this information showed like I own a 100 percent, doesn't make sense, right? You add up all the percentage, it's like -- it's like way off.**
Q. Okay. But you know that neither you nor Jack put that in, correct?
A. We know the structures, we know the shares, we know the number of shareholders. That's the online -- through you saw and we saw is the shares, and we know **the information we provide to the online portal, but the form like I don't know why my name is showing as title as owner, that's -- that's the thing, I don't know, I don't know why this happened.**
Q. Okay. So that's not information that you put in, correct?
A. No.
Q. And you don't know who put that in, correct?

A. No, I don't know.

Q. Okay. All right. So let's turn to -- it says, "XLD Group N.A. Real Estate Development, Inc. owner 95 percent," but was that true at the time?

A. Yeah.

Q. Okay. And did you put that in?

A. Well, I knew -- you mean like I filled in, like in the form or what do you mean? I'm telling you that I know like the structure is. **I saw the Group N.A. owns 95 percent, and the Grand Tripod owns five percent, that's my understanding. But why this form comes out like this, has four lines, I don't understand, I don't know.**

Q. Okay. So you don't know how this information this form this way, correct?

A. No, I don't know.

Q. Okay. And you submitted this form, though, correct?

A. Yes. **I submitted through the online portal.**

Q. Okay. And when you submitted through the online portal, did it give you an opportunity review everything that you're about to submit before you click the button to submit it?

A. No.

Q. No?

A. No, I don't remember completely, no.

(Zhang Depo. 56:18 – 58:19, JAE Ex 4.)(emphasis added).)

**[continued on next page]**

2. <u>Relator's "Facts" Concerning an Email Exchange With the Lending Bank is Out of Context and Misleading.</u>

Relator describes an email exchange with the lending bank "in which she was asked to disclose the applicant's ownership and was explicitly advised as follows," providing the following phrase ("the Phrase At Issue") that comprise a small portion of the bank's e-mail:

> If the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership until it arrives at the Beneficial Owners (Individual(s)/ Person(s).

(JAF 42-43)

Relator's presentation of the Phrase At Issue does not include the complete e-mail and is therefore misleading.

As indicated below, the actual e-mail shows the Phrase At Issue buried among texts in italicized font size 10 without any break between the requests for individual owners' information requested and the Phrase at Issue. Indeed, the Phrase At Issue is sandwiched between two requests for personal information of individual owners.

The request seeking information concerning "multiple layers of corporations, partnerships, and trusts" is not related to individual owners' information, but the reader is easily led to believe that the entire paragraph concerns request for information about individual owners, particularly since the e-mail begins with the request to provide the *"individual owners of the business,"* and continues with the request for the names, address, SSN's, prior criminal record, and bankruptcy and ends with the request for bankruptcy and criminal

Joint Brief - 10

record. The Phrase At Issue is buried between those two requests for personal information of individual owners without a break between the requests.

The actual email exchange in the exact format with the exact font and size of the content is the following:

*Please provide the individual owners (Beneficial Owners) of the listed Principal-Business, XLD Group N.A. Real Estate Development Inc., that owns 95% interest in XLD Group LLC. Provide the full names of the Beneficial Owners, full address, SSN's, and percentage of ownership in the Principal-Business. Provide a statement if any of the individual Beneficial Owners have a prior criminal record, if so, provide the violation, date, and final adjudication. Provide a statement if any of the individual Beneficial Owners have a prior bankruptcy or are currently in bankruptcy, if so, provide the type/chapter, date, and final determination. If the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership until it arrives at the Beneficial Owners (Individual(s)/ Person(s). The Beneficial Owners have to be checked for prior/current criminal record(s) and prior/ current bankruptcy(s).*

Individual owner of XLD Group N.A. Real Estate Development Inc: Please find attached ITIN – Jun Zhang

1.  Jun Zhang owns 100% of XLD Group N.A. Real Estate Development, Inc. He doesn't have any criminal record.
2.  Contact info for Jun Zhang:
    1.  Home address: 315 Deodar Ln., Bradbury, CA 91008
    2.  Telephone: 626-716-5663

    c. Email:junzhang@xldnagroup.com

d. DOB: Feb 26, 1962
Please let me know if there's any further information you need. Thanks.

Additionally, Relator's characterization in its "Facts" of Zhang's deposition testimony as "evasive and ultimately speculated that she had not read the instructions" (JAF 46) is inaccurate.

Zhang was asked "at the time you read [the email], what was in the blue?" She replied, "I don't remember." (71:11-19.) The email at issue is dated April 5, 2021, and Zhang's deposition took place on December 1, 2023. That Zhang would not remember what she saw in blue almost three years ago in one e-mail is not being evasive.

Zhang was then asked whether she "sees" the phrase at issue concerning structure involving multiple layers of corporations." After answering in the affirmative, Zhang explains that the email asked for "personal contact information," "home address and phone numbers" and "date of birth," so she "replied to them in [her] e-mail" and that she was not "sure" whether she went "through the whole thing." (71:20-73:17.) Zhang's explanation she stated to the question whether she "sees" the phrase at issue is not evasive because she did answer that she "sees" the phrase.

Zhang was then asked whether she was "testifying that at the time [she] sent that e-mail" Zhang "didn't see that [Phrase at issue]" to which Zhang replied, "I probably didn't go through the whole thing. I told you, like, she e-mailed me the questions, and I just answered the questions for the personal information. Like she asked in the e-mail." (73:17-23.) Accordingly, Zhang did not "ultimately speculated that she had not read the instructions." Instead, Zhang stated that she read the instructions, but that she did not read the *entire* instructions - "probably didn't go through the whole thing."

## Argument

## I.    Standard for Summary Judgment

## Plaintiff's Position

Summary judgment is appropriate when the evidence, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  As set forth

in more detail below, Plaintiff respectfully submits that summary judgment is appropriate under this standard.

**Defendant's Position**

Defendants, as a moving party, have the burden of production and persuasion that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (FRCP 56(a).) Although Relator, as the plaintiff, has the burden of proving *all* elements of FCA, Defendants should prevail if they prove that there is no genuine dispute as to any material fact as to *any* element of FCA. Here, Defendants met their burden in that there is no dispute as to the central material fact, namely that Defendants do not own or hold interest in any Chinese company.

Alternatively, the moving party may carry its initial burden on summary judgment by "showing" the opposing party *lacks sufficient evidence* to carry its ultimate burden of persuasion at trial; i.e., it does not have evidence from which a jury could find an essential element of the opposing party's claim or defense. (FRCP 56(c)(1)(B); *Celotex Corp. v. Catrett* (1986) 477 US 317, 325.) "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (*Celotex, supra,* 477 U.S. at 322-23.)

Although all of the evidence must be construed in the light most favorable to the non-moving party, "[o]nly reasonable inferences can be drawn from the evidence." (*Eastman Kodak Co. v. Image Technical Servs.* (1992) 504 U.S. 451, 469 n.14.) Here, reasonable inferences drawn from the evidence are not sufficient for Relator to carry its ultimate burden of persuasion at trial.

## II.    Elements of a False Claims Act Case

**<u>Plaintiff's Position</u>**

Under applicable precedent, Plaintiff must establish 4 elements in order to prevail:  falsity, scienter, materiality, and causation.  *See*, *e.g.*, *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).  As set forth in more detail below, Plaintiff respectfully submits that all of these elements are present as a matter of law.

**<u>Defendant's Position</u>**

There is simply no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. The central issue in this case is Relator's interpretation of the Certification that is at odds with Defendants' representative Ms. Jiaqui Zhang ("Zhang")'s reasonable interpretation of the Certification at the time Zhang entered her initials on the Certification on behalf of Defendants. (JAF 66-68.) Relator contends that the Certification excludes from eligibility those companies that are "**owned by or held by**" a Chinese company, but nowhere in the Certification are the words "**owned by**" or "**held by**." Instead, the Certification refers to a company that "**owns or holds**" interest in a Chinese company.

Accordingly, there is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law.

**[continued on next page]**

**II(a).  Falsity**

**<u>Plaintiff's Position</u>**

The language of the certification at issue tracks the statutory language.  The applicable law provides as follows:

> The term "eligible entity" . . . does not include . . . any business concern or entity . . . for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership

15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

The certification at issue tracks the statutory language and provides as follows:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; . . .

(JAF 9)

Although the certification contains a lot of words, the meaning is reasonably clear:  Applicants which are substantially owned -- directly or indirectly -- by PRC entities are not eligible for this disaster relief program.   Significantly, the language contains the phrase "economic interest of the business concern or entity."  If this

phrase does not refer to economic interest in the applicant itself, then what entity does it refer to?  Defendants offer no good answer to this question and yet they insist that the certification clearly refers to subsidiaries and not parents.

Further, there is no dispute that at all times relevant to this matter, both of the Defendants were owned by Sichuan Singlida, a PRC entity.  (JAF 26-28). Accordingly, as a matter of law, the certification at issue was false.

**Defendant's Position**

Relator has insufficient evidence to prove falsity in that the Certification is reasonably read to mean "owns or holds" and not "owned or held by." On this ground alone, Defendants are entitled to judgment as a matter of law. Failure to prove the existence of a false claim is fatal to Relator's FCA cause of action, and is grounds for summary judgment in the defendant's favor. (*U.S. ex rel. Aflatooni v. Kitsap Phys. Serv.* (9th Cir. 2002) 413 F.3d 995, 996-97.)

It is undisputed that the only issue concerning the Certification are the words "**owns or holds**," i.e., whether those words mean "owns or holds" (as Defendants contend), or "**owned by or held by**" (as Relator contends). It is also undisputed that Zhang understood at the time she signed Certification that the companies that "own" or "hold" interest in a Chinese company are not eligible. Since Defendants do not own or hold any interest in any Chinese company, Zhang initialed Certification. (JAF 66-68.)

The Certification is written in such a way to be reasonably understood as excluding from eligibility those companies that own Chinese companies: The subject phrase ("Subject Phrase") is "The applicant is not a business concern or

entity" followed by a subsection (a), which includes the phrase at issue "**owns or holds**" interest in a Chinese company ("Phrase at Issue").

Before the Phrase at Issue, there are no other intervening words, or any language that allows the reader to deviate from Subject Phrase. Accordingly, Subject Phrase remains consistent throughout the entire sentence. While there is no connective word immediately preceding Phrase at Issue, the word "that" precedes the phrase before the Phrase at Issue: "**that** has significant operations in China." Therefore, Phrase at Issue is reasonably read with the word "owns or holds interest in the business concern or entity [that has significant operations in China]."

The verb "that has significant operations in [China], owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, . . ." can only be reasonably read in a manner that respects the entire subject phrase. The words "the business concern or entity" therefore relates to the company "that has significant operations" in China. In other words, Defendants are certifying that they do ***not*** have significant operations in China and do ***not*** own or hold any interest in a company that has significant operations in China.

Further, as a layperson, Zhang's reading of the Certification is reasonably expected to be straightforward, and the Certification is not subject to a reading that Relator urges that can only be achieved by changing the words "**owns or holds**" to "**owned by or held by**."

Relator contends that since the words "the business concern or entity" was used, the Certification is referring to owning or holding interest in the Applicant. This contention lacks merit in that the entire phrase then becomes nonsensical because the subject phrase is still "The Applicant is not a business concern or entity." A statement that says the Applicant is not a business concern that owns or

holds interest in the Applicant itself is nonsensical and cannot be read to change the word "owns or holds" to "owned by or held by."

Additionally, Reading the Phrase at Issue in whole, "The Applicant is not a business concern or entity" "that has significant operations in [China]," "owns or holds, directly, or indirectly not less than 20 percent of the economic interest of the business concern or entity" still does not make Defendants ineligible even if "the business concern or entity" at the end is interpreted to be the Applicant because Defendants do not have significant operations in China.

Even for the sake of argument the words "that has significant operations in [China]" are omitted, "The Applicant is not a business concern or entity" "owns or holds, directly, or indirectly not less than 20 percent of the economic interest of the business concern or entity" still does not make Defendants ineligible because the subject phrase preceding the subsection (a) still remains consistent and Applicant does not own or hold any interest in any Chinese company.

There is simply no reasonable way to read the Certification as meaning to exclude U.S. companies that are owned or held by Chinese companies. On the other hand, it is reasonable to read it as excluding US companies that own or hold interest in Chinese companies.

As a matter of law, the Certification, while poorly written and ambiguous, cannot reasonably be interpreted to mean that "the Applicant is not a business concern or entity" "owned by" or "held by" a Chinese company such that Defendants' Certification can be deemed to be false.

**[continued on next page]**

**II(b). Scienter**

**<u>Plaintiff's Position:</u>**

Under applicable law, the scienter requirement of the False Claims Act is defined as follows:

the terms "knowing" and "knowingly"—

> (A) mean that a person, with respect to information—
>
> > (i) has actual knowledge of the information;
> >
> > (ii) acts in deliberate ignorance of the truth or falsity of the information; or
> >
> > (iii) acts in reckless disregard of the truth or falsity of the information

31 U.S.C. § 3729(b)(1).

Here, the Defendants' authorized representative admitted at deposition that at the time she completed the application forms, she was aware that the Defendants were ultimately owned by a PRC company.  (JAF 29-34)  Arguably, this admission, standing alone, should be enough to satisfy the scienter requirement. However, if the Court determines that the Defendants must also have knowledge of the correct meaning of the law, it is worth bearing in mind the following:

First, the Supreme Court recently observed as follows:

In some civil contexts, a defendant may be called "reckless" for acting in the face of an unjustifiably high risk of illegality that was so obvious that it

should have been known, even if the defendant was not actually conscious of that risk

*United States ex rel. Schutte v. Supervalu Inc.*, 143 S. Ct. 1391, 1404 n.5 (2023).

Plaintiff respectfully submits that this matter presents exactly the sort situation where this principle should be applied.  As a matter of law, and at a minimum, there was an obvious and significant risk that the certification applied to parents and not subsidiaries.  Therefore, at a minimum, the Defendants acted recklessly as a matter of law.

Second, in connection with the loan application process, the Defendants were asked to identify their parent companies.  (JAF 35, 40, 42, 43).  Indeed, the Defendants were explicitly advised in one email that "if the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership"  (JAF 43).

In response, the Defendants omitted any mention the PRC parent.  (JAF 36-39, 41, 44, 45)  Indeed, at deposition the Defendants' representative denied putting this information into the application form and speculated that it had somehow been inserted "electronically."  (JAF 39).

Of course, at trial this is likely to come in as evidence that the Defendants knew perfectly well that they were concealing important information when they applied for the loans.  But for purposes of summary judgment, the

misrepresentation is still significant:  Under the circumstances, and as a matter of law it was very obvious that the identity of the Defendants' owners, including corporate owners, was important to the application process.  So obvious that even if knowledge of the eligibility requirements is required for liability, the recklessness standard should be deemed met as a matter of law.

Additionally, in the event that the Defendants cross-move for summary judgment on this issue, the Defendants' false representations and non-credible explanations are more than sufficient to create an issue of fact on this point.  In this regard, it should also be noted that the Defendants' authorized representative insists, to this day, that she is confident that the language at issue applies to subsidiaries and not parents.  (JAF 47)

**<u>Defendants' Position</u>**

Relator has insufficient evidence to prove scienter. There is no dispute that Defendants deny any knowledge of falsity, or deliberate ignorance. A defendant's reasonable interpretation, as here, of an ambiguous statute or legal obligation can preclude a finding of FCA liability where no issue of fact exists as to whether the defendant acted with actual knowledge that a claim is false, deliberate ignorance of the truth or falsity of a claim, or reckless disregard for the truth or falsity of a claim. (*U.S. ex rel Oliver v. Parsons Co.* (9th Cir. 1999) 195 F.3d 457, 464-65.)

Relator therefore contends that Defendants acted with "reckless disregard" of the falsity, claiming that Defendants were reckless for "acting in the face of an unjustifiably high risk of illegality that was so obvious that it should have been

known, even if the defendant was not actually conscious of that risk," **incorrectly and misleadingly relying on and citing to a dicta** on page 1404, footnote 5 of *United States ex re. Schutte v. SuperValu, Inc.* (2023) 598 U.S. 739, **choosing to omit the actual holding of *Schutte* on the term "reckless disregard."**

In that footnote, *SuperValu*, referring to certain "civil contexts," stated that the court needed not consider how or whether such objective form of "recklessness" relates to FCA because "the FCA standards can be satisfied by a defendant's subjective awareness of the claim's falsity or an unjustifiable risk of such falsity."

**The actual discussion on the term "reckless disregard" states that it applies to "defendants who are conscious of a substantial and unjustifiable risk that their claims are false, but submit the claims anyway."** (*Id.* at 1400-1401.) "What matters for an FCA case is whether the defendant knew the claim was false." (*Id.* at 1396.) There is simply no evidence to show that Defendants knew, or were conscious of any risk that their claims were, false.

The Certification tracks the statutory language in 15 U.S.C. Section 636(a)(37)(A)(iv)(III)(cc)(AA). There is no authoritative interpretation of the statute that is contrary to Zhang's understanding of the Certification. At the time Certification was initialed, there was no formal guidance by the SBA or any agency what Certification should mean and there was no case law interpreting the statute at issue. Knowledge is lacking when the defendant acted within a reasonable interpretation of an ambiguous regulation. (*U.S. ex rel. Hixson v. Health Mgmt. Sys. Inc.* (8th Cir. 2010) 613 F. 3d 1186. 1190.)

In light of Zhang's reasonable interpretation of Certification at the time she signed, namely that Defendants were eligible since Defendants did not own, or held any interest in, any Chinese company (JAF 66-68.), the "scienter" element is

not satisfied. Accordingly, Relator has insufficient evidence to prove scienter, and the judgment should be granted as a matter of law for the Defendants on this ground alone.

**II(c):  Materiality**

**<u>Plaintiff's Position</u>**

From Plaintiff's perspective, materiality should not be very controversial. As noted above, the applicable law explicitly makes applicants for second-draw PPP relief ineligible if they have PRC parentage.  Moreover, the application contains an explicit certification on this issue and explicitly states that the certification must be initialed:

> The authorized representative of the Applicant must certify in good faith to all of the below by initialing next to each one:
>
> *              *              *
>
> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited  liability company or partnership;

(JAF 8-9).

This should be enough, but on top of that, the SBA has been gracious enough to provide an affirmation confirming that an applicant which does not so certify would not be considered eligible.  (JAF 48).

Additionally, Plaintiff served Requests for Admission on the Defendant and received the following response:

Request to Admit:

Each Defendant in this matter had to Manifest Assent to a PRC Certification in order to receive the Applicable Disaster Relief.

Response:

See General Objections. Further, compound, vague and ambiguous. Subject to and without waiving these objections, Defendants answer as follows: Admit that Defendants initialed the applicable boxes prior to receiving the PPP relief funds.

Request to Admit:

Each Defendant in this matter would not have received the Applicable Disaster Relief had it not Manifested Assent to a PRC Certification.

Response:

See General Objections. Further, vague and ambiguous; calls for speculation on the part of Defendants. Subject to and without waiving these objections, Defendants answer as follows: Admit that Defendants initialed the applicable boxes prior to receiving the PPP relief funds.

(JAF 49-52)

In other words, Defendant supplied evasive responses but did not actually deny the substance of the Requests to Admit or explain in detail why it was unable

to admit or deny. *See* Fed. R. Civ. P. 36(a)(4). Therefore, their response (more precisely, their lack of response) should be treated as a full admission.

Although this is not the maximally charitable reading of the Defendants' responses to the Requests for Admission, it must be emphasized that (1) the Defendants' RFA responses are the result of their own gamesmanship; and (2) it appears highly likely that the reason the Defendants responded evasively is that they cannot in good faith deny that the materiality element is satisfied and know that if they made "reasonable inquiry" it would lead them to an unfavorable conclusion.

More importantly, even in the absence of the Requests to Admit, the SBA Affirmation; application form language; and the statute itself establish materiality as a matter of law. Accordingly, Plaintiff respectfully submits that the materiality element is satisfied.[2]

**Defendant's Position**

Relator has insufficient evidence to prove materiality. There is nothing in the Certification that make it "explicit," as Plaintiff contends, that applicants are ineligible if they are "**owned by**" a Chinese company. The only explicit words are the business concern or entity that "**owns or holds**" interest in a Chinese company. Therefore, there is nothing material to FCA about any statement in the

---

[2] It should also be noted that Plaintiff intends to obtain additional confirming evidence on this issue, as well as on the issue of causation. (JAF 53)

Certification. Accordingly, this element should also be resolved in Defendants' favor.

**II(d): Causation**

**<u>Plaintiff's Position</u>**

As with materiality, the issue of causation does not appear terribly controversial.  Indeed, it is pretty much a matter of common sense that an applicant needs to complete and submit the application form in order to receive second-draw PPP relief.  Moreover, the application form itself states that the applicant must certify to each certification, including the PRC Certification.  (JAF 8).

But if there were any doubt on this point, the SBA affirmation confirms that Form 2483-SD (or equivalent) is a required part of the application process.  (JAF 54).  Therefore, the only reasonable inference is that there was a causal relationship between the Defendants' false certifications and the United States' payment of disaster relief monies.

Additionally, for the same reasons that the Defendants' responses to Requests for Admission establish materiality, those same responses also establish causation.

Accordingly, as a matter of law, this element is met.

**Defendant's Position**

Relator has insufficient evidence to prove causation. There is nothing in the Certification that caused the government to suffer any damages since the Certification makes ineligible those companies that own or holds interest in Chinese company, contrary to Plaintiff's strained contention that the Certification makes ineligible those companies that are "owned by" Chinese companies. Since Defendants did not own, or hold any interest in, any Chinese companies, this element has not been satisfied. Accordingly, this element should also be resolved in Defendants' favor.

## III.    Damages

**Plaintiff's Position**

A Defendant's liability under the False Claims Act is a minimum penalty of $5000, adjusted for inflation, plus three times the damages sustained by the United States due to the Defendant's acts. *See* 31 U.S.C. § 3729(a)(1).[3] The current adjustment amount for the $5000 minimum penalty is $13,508. *See* 28 C.F.R. § 85.3(a)(9); 85.5(d).

---

[3]     Although the False Claims Act provides for a "voluntary disclosure" defense which permits the Court to reduce treble damages to double damages, *see* 31 U.S.C. § 3729(b)(2), the Defendants have not asserted this affirmative defense. *See* JAF 60; *Osinek v. Permanente Medical Group, Inc.*, Case No. 13cv3891, Slip Op. at p. 15-18 (N.D. Cal. Dec. 19, 2023) (treating voluntary disclosure as an affirmative defense).  In any event, there does not appear to be any indication in the record that the Defendants disclosed their PRC ownership to any federal officials at any time, let alone within 30 days as required by 31 U.S.C. § 3729(b)(2)(A).

For XLD Group, the damages sustained by the United States are three times (1) $2,000,000 loan payment; (2) the $60,000 in processing fees; and (3) the $12,547.95 interest payment for a total of $6,217,643.85. (JAF 55, 56, 57, 59).

For XLD Century, the damages sustained by the United States are three times (1) the $2,000,000 loan payment; (2) the $60,000 in processing fees; and (3) the $13,808.22 interest payment for a total of $6,221,424.66 (JAF 55, 56, 58, 59).

Adding the $13,508 civil penalty to each of these figures gives total liability of $6,231,151.85 for XLD Group and $6,237,932.66 for XLD Century.

For the Court's convenience, these calculations can be summarized as follows:

**XLD Group**:

| Item | Base Amount | Adjusted Amount |
| --- | --- | --- |
| Loan Principal | $2,000,000 | $6,000,000 (tripled) |
| Processing Fees | $60,000 | $180,000 (tripled) |
| Interest | $12,547.95 | $37,643.85 (tripled) |
| Civil Penalty | $5,000.00 | $13,508 (adjusted for inflation) |
| Total: | | $6,231,151.85 |

**XLD Century**

| Item | Base Amount | Adjusted Amount |
| --- | --- | --- |
| Loan Principal | $2,000,000 | $6,000,000 (tripled) |

| | | |
|---|---|---|
| Processing Fees | $60,000 | $180,000 (tripled) |
| Interest | $13,808.22 | $41,424.66 (tripled) |
| Civil Penalty | $5,000.00 | $13,508 (adjusted for inflation) |
| Total: | | $6,234,932.66 |

**Defendant's Position**

Relator has failed to meet its burden to prove each element of FCA. Accordingly, there are no damages to discuss.

**IV.  Public Disclosure Bar**

**IV(a): Introduction.**

**Defendants' Position**

Even assuming arguendo that Relator has sufficient evidence, the action is barred under the public disclosure bar.

The FCA's public disclosure bar provides that a relator cannot bring an action that is substantially similar to allegations or transactions that have already been publicly disclosed, unless the relator is an "original source of the information." (31 U.S.C. § 3730(e)(4).[4]  The FCA seeks to "strike a balance between encouraging

_____

[4] (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed --

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

private persons to root out fraud" while at the same time "stifling parasitic lawsuits" based on information already in the public domain or known to the government. (*Schindler Elevator Corp. v. U.S. ex rel Kirk* (2011) 563 U.S. 401, 411.) The FCA's principal means of striking this balance is through the public disclosure bar.

As "the relevant information has already entered the public domain," Relator's claims must be dismissed. (*See Graham County Soil and Water Conservation Dist. v. U.S. ex rel. Wilson* (2010) 559 U.S. 280, 285.)  To allow Relator's claims to move forward would render the public disclosure bar virtually meaningless, entitling any member of the public to allege FCA violations on the basis of little more than a data dive. (*See Schindler Elevator Corp. v. U.S. ex rel. Kirk* (2011) 563 U.S. 401, 413.

Here, Relator is not a whistleblower and has conceded that it is not the "original source. (JAF 61.)" News articles and other publication materials available on the internet disclosed a combination of facts disclose facts sufficient to permit a reasonable inference of purported fraud alleged in Relator's complaint. (JAF 69.) The courts have "consistently held" that the disclosures "need not have been made public in a single document." (*U.S. ex rel. Hong v. Newport Sensors, Inc.*, (C.D. Cal. May 19, 2016) No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246, at *6 (quoting *U.S. v. Catholic Healthcare W.* (9th Cir. 2006) 445 F.3d 1147, 1151 n.1; *see also U.S. ex rel. Law Project for Psychiatric Rights v. Matsutani* (D. Alaska

_____

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information. (31 U.S.C. § 3030(e)(4).)

Sept. 24, 2010) No. 3:09-CV-0080-TMB, 2010 WL 11526903, at *8 n.98 (*aff'd*, 454 F. App'x 644 (9th Cir. 2011)).)

**Plaintiff's Position**

In the event that the United States determines to oppose Defendant's public disclosure motion, then the motion must be denied and all the arguments on the issue are moot. *See* 31 U.S.C § 3730(e)(4)(a).

In the event the Court reaches the merits of this issue, the critical question is whether "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . ." 31 U.S.C § 3730(e)(4)(a). Thus, the critical question is whether there are any public disclosures which show that either of the Defendants was PRC-owned between March and/or May of 2021. As set forth below, these facts are not disclosed by any of the Defendants' public disclosure materials.

**IV(b): Original Source**

**Defendants' Position**

Relator has conceded that it is not the "original source." (*See* Exh. "1," 2/20/24 minutes of IDC.; JAF 61.)

**Plaintiff's Position**

Plaintiff agrees that the original source exception does not apply here, subject to the Defendant's obligation to refrain from using public disclosure materials which post-date August 2022.

**IV(c): Substantially The Same Allegations**

**Defendants' Position**

Substantially the same allegations as those in the complaint were publicly disclosed before the complaint was filed.

"The 'public disclosure' standard is not intended to be difficult to meet." (*Amphastar Pharms. Inc. v. Aventis Pharma SA*) No. 09-0023, 2012 U.S. Dist. LEXIS 162900, at *19 (C.D. Cal. Nov. 14, 2012) (citing *Hagood v. Sonoma Cnty. Water Agency* (9th Cir. 1996) 81 F.3d 1465, 1476.)  Public disclosure can occur through federal report, or the news media. (31 U.S.C . 3730(E)(4)(A).) The public disclosure bar has a "broa[d] sweep," requiring dismissal here. (*Schindler Elevator, supra,* 563 U.S. at 408.  An allegation is publicly disclosed if there is enough information that the government can investigate further or make a decision to proceed with its own claim. (*See e.g., U.S. v. Alcan Elec. & Eng'g, Inc.* (9th Cir. 1999) 197 F.3d 1014, 1019.)

Given the proliferation of material from electronic sources, numerous cases raised the question of whether such sources fell under the meaning of "from the news media."  A variety of electronically available information has been considered. Generally, information published on the internet has been held to be a public disclosure so long as the websites are readily accessible. (See *U.S. ex rel. Green v. Serv. Contract Educ. & Training Trust Fund* (D.D.C. 2012) 843 F. Supp. 2d 20, 32-33 ("there is no evidence or contention that access to the website was limited to SCETTF or LIUNA members of that the website was in any other way restricted"); *United States ex. rel Repko v. Guthrie Clinic, P.C.* (3rd Cir. 2012) 2011 WL 3875987, aff'd 2012 WL 3104883 (material in question disclosed on several different websites including Guidestar, Bloomberg Professional and Standard & Poor's); *United State ex. rel Doe v. Staples, Inc.* CIV. 08-846 RJL, 2013 WL 1192982 (D.D.C. Mar. 22, 2013); *United States ex rel. Unite Here v. Cintas Corp.* (N.D.Cal. Dec. 21, 2007) No. C 06-2413 PJH, 2007 WL 4557788, at *14  ("[t]he 'fact' of the contracts between [defendant] and the federal government was publicly disclosed in the news media, as that information was available on the

Internet"). The following are the examples of the disclosure in currently available online in news media that indicate that a Chinese property investment firm Sichuan Xinglida Group purchased Los Angeles Airport Mariott and Torrance Mariott (JAF 69.):

- China Daily article dated 12/23/14: XLD Group, the US subsidiary of Chinese property investment firm Sichuan Xinglida Group, bought the Los Angeles Airport Marriott for $160 million;
- Real Estate News & Media article dated 12/24/14: XLD Group, the US subsidiary of Chinese hotel investment company Sichuan Xinglida Group Enterprises, acquired the Los Angeles Airport Marriott from DiamondRock Hospitality Company for $150 million;
- Los Angeles Times article dated 12/18/14: a Chinese real estate developer has purchased the Los Angeles Airport Marriott for $160 million and vowed to make significant improvements;
- Commercial Property Executive article dated 12/31/14: XLD Century, LLC acquired the LAX Marriott from Diamondrock Hospitality Co. for $160 million. Asia Pacific Capital co. represented the buyer, a development group from Sichuan, China, in the transaction;
- China Travel News article dated 12/29/14: China XLD Group's acquisition of the Los Angeles Airport Marriott for $165 million following its Marriott acquisition last year;
- Los Angeles Business Journal article dated 12/21/14: XLD Group, the US arm of Chinese real estate company Sichuan Xinglida Group Enterprises Co., bought the Los Angeles Airport Marriott Hotel for $160 million last week;
- Mingtiandi article dated 12/21/14: XLD Group, a US subsidiary of Sichuan Xinglida Group, closed on the purchase of the Los Angeles Airport Marriott for $160 million;
- Daily Breeze article dated 11/21/13: XLD Group, the recently formed US subsidiary of Chinese hotel investment company Sichuan Xinglida Group enterprises, closed escrow on the Torrance Marriott;
- Los Angeles Times article dated 11/22/13: Sichuan Xinglida Group Enterprises Co., bought the Torrance Mariott South Bay through its US subsidiary, XLD Group;
- Cox Castle article dated 12/23/14:  Cox, Castle & Nicholson represented XLD Group LLC, the US subsidiary of Chinese hotel investment company Sichuan Xinglida Group Enterprises, in its purchase

of the Los Angeles Airport Marriott from DiamondRock Hospitality Company for $15 million;

- Hotel Management Network article dated 12/21/14: Real estate investment trust DiamondRock Hospitality completed the sale of Los Angeles Airport Marriott to Chinese real estate developer Sichuan Xinglida Group, who acquired it through the US subsidiary XLD Group for $160 million;

- Wealth Management article dated 11/26/13: The entry of Sichuan Xinglida Group Enterprises Co. Ltd., through its US subsidiary XLD Group, LLC into the Los Angeles market with the Chinese-based investor's purchase of the Torrance Marriott South Bay hotel;

- Business Wire article dated 1/21/15: Warnick + Company has been appointed asset manager of two Los Angeles hotels, the Torrance Marriott South Bay and the Los Angeles Airport Marriott, by XLD Limited, the US subsidiary of Sichuan Xinglida Group Enterprises Co, a China-based real estate investor;

- Commercial Property Executive article dated 1/2/15: XLD Century acquired the LAX Marriott from DiamondRock Hospitality Co. for $160 million;

- Market Screener article dated 11/20/13: XLD Group entered into an agreement to acquire Torrance Marriott South Bay from DiamondRock Hospitality Co. for $74 million on 9/30/13 and completed the acquisition for approximately $76 million on 11/20/13;

- Market Screener article dated 12/17/14: XLD Group, LLC entered into an agreement to acquire Los Angeles Airport Marriott from DiamondRock Hospitality Co. for approximately $170 million on 11/17/14 and completed the acquisition on 12/18/14;

- Secretary of State Statement of Information for XLD Century, LLC filed on 4/5/21;

- Secretary of State Articles of Organization for XLD Group, LLC filed on 8/27/13;

- Secretary of State Statement of Information for XLD Group, LLC filed on 4/5/21;

- Form SBA Form 2483-SD available VIA GOOGLE, through various websites, such as the US Department of Treasury and various loan agencies; and

- Information on Defendants' PPP Loan Amount provided by SBA website.

Additionally, Relator's interrogatory responses indicate that he obtained information concerning the allegations in the complaint through online searches, such as publicly available information on SBA website, publicly available information on Secretary of State website and other websites that are in the public domain, but does not indicate that Relator obtained any inside information. (JAF 69: Amended Relator's Interrogatory Responses #8-13.)

Accordingly, all material allegations alleged in Relator's complaint were derived from publicly available information, Relator is not the original source, and the public disclosure bar applies.

**Plaintiff's Position**

Plaintiff agrees that publicly disclosed information shows that a PRC entity purchased the hotels at issue in or about 2013 however this fact, standing alone, is not "substantially the same" as the facts that (1) Defendant XLD Century LLC was PRC owned in the spring of 2021; or (2) Defendant XLD Group LLC was PRC owned in the spring of 2021.

Essentially all of the Defendants' public disclosure materials are from many years ago and a large portion of the materials either do not identify the Defendants by name or mis-identify them.  For example, Exhibit 18 states that an entity called "XLD Limited" purchased the Los Angeles Airport Marriott.

More importantly, hotels change ownership on a regular basis and there is authority that public disclosures can become stale for purposes of the False Claims Act.  *See e.g. United States ex rel. Kester v. Novartis Pharmaceuticals Corporation*, 43 F. Supp.2d 332, 353 (S.D.N.Y. 2014).

While it is true that Plaintiff obtained the critical information in this matter -- that the Defendants were PRC owned during the relevant time period -- from publicly available sources, not all publicly available information counts for

purposes of the public disclosure bar.  And everything relied on by the Defendant which does count are materials which do not disclose the critical facts.

Although the Courts have not yet established clear rules for determining when such information becomes too stale and removed to qualify as a public disclosure, Plaintiff respectfully submits that here, where the time period is more than 5 years, the disclosures should not qualify.  Accordingly, in the event that the United States does not oppose the public disclosure motion, it should nonetheless be denied.

## IV.    Conclusion

**Plaintiff's Position**

For the reasons set forth above, Plaintiff respectfully submits that the Court should enter judgment again XLD Group in the amount of  $6,231,151.85 and against XLD Century in the amount of $6,234,932.66 with costs, fees, and an appropriate relator share to be determined at a future date.

**Defendant's Position**

Relator's complaint fails as a matter of law because it is based on his own reading of the Certification that requires the words "owns or holds" to be changed to  "owned by or held by." Relator's claims are also rooted in facts that are in public domain, and he is not the "original source." Court should therefore dismiss the complaint against Defendants with prejudice.

/s/ David Abrams

David Abrams, Attorney at Law
Attorney for Plaintiff-Relator
PO Box 3353 Church Street Station
New York, NY 10008
Tel. 212-897-5821
dnabrams@wjlf.org

Dated: ____April 1, 2024____, 2024
Delhi, New York

MOON & DORSETT, PC

by:____/s/ Dana Moon /DNA____

Dana Moon, Esq. (Bar No. 185154)
wk@moondorsett.com
445 S. Figueroa Street, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 380-1526

Dated: ____April 1____. 2024
Los Angeles, CA

David Abrams hereby attests that by email dated April 1, 2024 Defendants' counsel indicated that she concurred in this document and consents to its filing.