UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL GNGH2 INC.,<br><br>Plaintiff,<br><br>v.<br><br>XLD CENTURY LLC et al.,<br><br>Defendants. | Case No. 2:22-cv-05514-SB-PVC<br><br>ORDER GRANTING IN PART RELATOR'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65] |

In response to the COVID-19 pandemic and its impact on the economy, the federal government created the Paycheck Protection Program (PPP) to provide financial assistance to certain affected businesses. Defendants XLD Century LLC and XLD Group LLC each applied for and received a $2 million PPP loan that was later forgiven. Relator GNGH2, Inc. filed this qui tam action under the False Claims Act (FCA), alleging that Defendants were not eligible to receive these loans because they were owned in part by an entity created in the People's Republic of China. Both sides now move for summary judgment. The Court finds this matter suitable for decision without oral argument and vacates the May 10 motion hearing. Fed. R. Civ. P. 78; L.R. 7-15.[1] Defendants' motion invoking the public disclosure bar is denied because the government has exercised its right to veto that defense. Relator, on the other hand, is entitled to partial summary judgment because Defendants falsely certified that they were not owned by a Chinese entity and received the loans as a result. However, a genuine dispute of material fact as to whether Defendants acted with the requisite knowledge precludes summary judgment on the element of scienter.

[1] The parties' requests to appear remotely or to continue the hearing are therefore denied as moot.

I.

The facts in this case are largely undisputed. Defendants XLD Group and XLD Century are limited liability companies that own the Torrance Marriott and the LAX Marriott, respectively. Joint Appendix of Facts (JAF) 1–4, Dkt. No. 65-2.[2] Both entities are (and at all relevant times were) predominantly owned—through a chain of subsidiaries—by Sichuan Singlida, a Chinese company based in the People's Republic of China. JAF 18–26.[3]

In 2021, Defendants each applied for a $2 million disaster relief loan under the PPP. JAF 5–6. Jiaqi Zhang, a vice president at both XLD Group and XLD Century, completed the application forms for both loans. JAF 29–32. As a condition of receiving the loans, she certified for each Defendant that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

JAF 7–10, 14; Joint Appendix of Evidence (JAE) F, G, Dkt No. 65-3. When she submitted this certification, Jiaqi Zhang was aware that both XLD Group and XLD

---

[2] Unless otherwise indicated, citations to the JAF are to undisputed facts, to the undisputed portions of partially disputed facts, or to the portions of disputed facts that do not appear to be genuinely in dispute based on the stated dispute. *See* Dkt. No. 35 at 6 ("If a party disputes a fact in bad faith by offering evidence that does not contradict the proffered fact *or* by failing to provide a specific citation to the supporting evidence, the Court will deem the fact undisputed for purposes of the motion.").

[3] Sichuan Singlida fully owns XLD U.S. Top LLC, which fully owns XLD N.A. Real Estate Inc. and XLD Investment. JAF 19–20, 23. XLD N.A. Real Estate Inc. owns 95 percent of Defendant XLD Group, and XLD Investment owns approximately 89 percent of Defendant XLD Century. JAF 18, 22.

Century were ultimately owned by a Chinese company. JAF 33–34. Without the certification, Defendants would have been ineligible for the loans, and Jiaqi Zhang submitted the certifications to receive the loans. JAF 11, 15, 48.

The PPP application also required Defendants to "list all owners of 20 percent or more of the equity of the applicant." JAE F, G. In response, Jiaqi Zhang listed XLD Group's ownership as being owned 95 percent by XLD Group N.A. Real Estate Development Inc. and 5 percent by Grand Tripod LLC. JAE F at 1.[4] The application also lists Jiaqi Zhang and Jun Zhang each as 100 percent owners of XLD Group, although Jiaqi Zhang denied having completed this part of the application form. *Id.*; JAF 39. Jun Zhang owns the majority of Sichuan Singlida's shares. JAF 21. The record does not identify the relationship, if any, between Jiaqi Zhang and Jun Zhang, although the same address in California is listed for both on the XLD Group application. JAE F at 1. XLD Century's application incorrectly identified Jiaqi Zhang as the sole owner, although she denied having listed herself. JAF 41; JAE G.

In connection with XLD Group's PPP loan application, the bank administering the loan emailed Jiaqi Zhang (who evidently also uses the name Becky Zhang) to ask her for more information related to the ownership structure of XLD Group.[5] Among other requested information, the bank asked,

> If the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership until it arrives at the Beneficial Owners (Individual(s)/ Person(s)[)].

JAF 43; JAE H. Jiaqi Zhang replied that "Jun Zhang owns 100% of XLD Group N.A. Real Estate Development Inc." JAF 44; JAE H. Jiaqi Zhang did not identify

---

[4] The parties in the JAF incorrectly state that the application identified XLD N.A. Real Estate, Inc. as an owner of XLD Group. JAF 36. While that is the name of the entity that the parties agree was the 95 percent owner of XLD Group, JAF 18, the application lists the 95 percent owner as XLD *Group* N.A. Real Estate *Development* Inc. JAE F at 1 (emphasis added). Neither side has addressed this discrepancy or suggested that it affects the issues before the Court.

[5] The email identifies the respondent as Becky Zhang, but the parties do not dispute that it was Jiaqi Zhang who was corresponding with the bank. JAF 42–47, JAE E 69:8–70:6.

all levels of ownership between XLD Group and Jun Zhang, which included Sichuan Singlida. JAF 45.

Defendants thereafter obtained the loans, each receiving $2 million. JAF 12, 16. These loans were forgiven. JAF 5–6. In addition to the loans themselves, the government paid interest plus $60,000 in processing fees to the lending bank for each loan. JAF 59.

Relator—a New Jersey company with no apparent connection to the loans at issue—filed this action in August 2022, alleging a single claim for violation of the FCA. Dkt. No. 1. The government declined to intervene, and the case was unsealed in July 2023. Dkt. No. 14. Relator now moves for summary judgment on its claim, and Defendants move for summary judgment based on the public disclosure bar. Dkt. No. 65.[6] After the motion was filed, the government filed an opposition to Defendants' public disclosure bar defense. Dkt. No. 70.

II.

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The moving party has the initial burden of establishing that there are no disputed material facts. *Id.* at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

[6] Relator filed its reply brief within the time otherwise allowed by the Court's order on motions for summary judgment, Dkt. No. 35, but in violation of a briefing schedule to which the parties had agreed. *See* Dkt. No. 73 (Defendants' objection and motion to strike Relator's reply). Relator apologized for its tardiness, claiming inadvertent error. Because there appears to be no prejudice to Defendants, who would not have been able to respond to the reply irrespective of its timing, and because Relator's reply brief does not alter the Court's analysis, the Court denies Defendants' motion to strike.

*Catrett*, 477 U.S. 317, 322 (1986). Where the court does not grant a party's requested relief, it may still grant partial relief on distinct issues or facts. *See* Fed. R. Civ. P. 56(g).

III.

The FCA makes liable anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A), (B). Although the "archetypal *qui tam* False Claims action" involves a private company overcharging the government, the FCA is also violated "where a party merely falsely certifies compliance with a statute or regulation as a condition to government payment." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172–73 (9th Cir. 2016). Under this latter theory—which is at issue here—"it is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *Id*. at 1173.

A claim under the FCA requires "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Id*. (quoting *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)). Courts "interpret the FCA broadly, in keeping with the Congress's intention to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th Cir. 2020) (cleaned up).

A.

As noted above, each Defendant certified that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that

> retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

JAF 7–10, 14; JAE F, G. The parties' principal dispute is over the meaning of this language. The certification tracks verbatim the PPP's statutory language excluding such entities from eligibility. 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc). Because the question is whether Defendants made a false statement, the Court focuses on the certification rather than the statute. However, since their language is identical, as a practical matter, there is no difference between interpreting the statutory meaning and interpreting the meaning of the certification.

Both sides assert that the disputed language is unambiguous. Defendants claim that it can only be read as meaning that they do not have any Chinese subsidiaries. If so, their certification was true, since it is undisputed that they have no Chinese subsidiaries. Relator, in turn, asserts that the statement certifies that Defendants have no Chinese parent companies, which is undisputedly false as to both Defendants.

When addressing claims under the FCA, "courts decide whether a claim is false or fraudulent by determining whether a defendant's representations are accurate in light of applicable law," the meaning of which is "subject to judicial interpretation." *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008). Thus, while a defendant's reasonable misunderstanding of governing language may be relevant to the element of scienter, it does not preclude a finding of falsity. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 463 (9th Cir. 1999).

The language in the certification—and in the underlying statute on which it is based—is poorly written but not ambiguous. The parties' dispute boils down to the subject of the verb phrase, "owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership." Defendants suggest that its subject is the applicant—i.e., that they certified that they do not own or hold an interest in a Chinese company. But this ignores the noun phrase immediately preceding "owns or holds." That noun phrase—"an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong" is the subject of the verb phrase that follows. Substituting "a Chinese company" for the more detailed noun phrase

makes clear that the certification addresses the parents, rather than the subsidiaries, of the applicant:

> The Applicant is not a business concern or entity (a) for which [a Chinese company] owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

This reading is also necessary to make sense of the difference in phrasing between the two separate conditions. For part (b), the use of "that" reflects that "a business concern or entity" is the subject of the verb phrase—i.e., that applicant is certifying that it is "not a business concern or entity . . . that retains" a Chinese resident on its board of directors. In contrast, the parallel clause in part (a) begins with "for which" instead of "that," reflecting that the applicant is not the subject of the verb "owns or holds." To the contrary, "the business concern or entity"—i.e., the applicant—is the object of the ownership. Reusing the identical language ("The Applicant is not *a business concern or entity* (a) for which [a Chinese company] owns or holds, directly or indirectly, not less than 20 percent of the economic interest *of the business concern or entity* . . .") reinforces that the provision addresses whether a Chinese company owns 20 percent of the applicant, not whether the applicant owns 20 percent of some other company.[7]

Defendants' contrary reading relies heavily on the form of the verbs "owns or holds," contending that Relator improperly reads them as meaning "owned by or

[7] This view is supported by a review of articles addressing eligibility drafted around the time of the second round of PPP loans. *See, e.g.*, Adams, Matthew, S. and Kingman, Marissa K., *Should You Seek a Second PPP Draw if Your Company Has Ties to China*, https://www.foxrothschild.com/publications/should-you-seek-a-second-ppp-draw-if-your-company-has-ties-to-china, last visited May 2, 2024 ("PPP2 disqualifies companies . . . Of which a Chinese Company owns or holds, directly or indirectly, 20% or more of the economic interest of the business."); Suzuki, LJ, *PPP Second Draw Details for Small Businesses*, https://cfoshare.org/blog/ppp-round-2-details/, last visited May 2, 2024 (stating that business "owned or held at least 20% by a Chinese or Hong Kong entity" are excluded from eligibility).

held by." But this simplistic focus on the two verbs ignores their context, most critically, that their subject is not "a business concern or entity" but rather "an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong." It also ignores the object of the verbs—"20 percent of the economic interest of the business concern or entity"—with no explanation of the identity of "the business concern or entity" if it is not the applicant.

Since the only grammatical reading of the certification is that it refers to the applicant's parent companies, Defendants' certifications that no Chinese company owned 20 percent or more of their economic interests were false. It is undisputed that Sichuan Singlida, a Chinese entity, indirectly owns more than 20 percent of XLD Century and XLD Group. JAF 26–28. Thus, Defendants' certification was false as a matter of law.

B.

To be liable under the FCA, a person must "knowingly" submit false information. 31 U.S.C. § 3729(a)(1)(A), (B). The FCA defines "knowingly" as meaning that the applicant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). Proof of the specific intent to defraud is not required, *id*., but "innocent mistakes, mere negligent misrepresentations and differences in interpretations will not suffice to create liability." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). "A contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met." *Oliver*, 195 F.3d at 464. On the other hand, scienter exists in "the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1211 (9th Cir. 2019) (quoting *United Healthcare*, 848 F.3d at 1174); *see also United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) ("By failing to inform himself of [Medicare's] requirements . . . [the defendant] acted in reckless disregard or in deliberate ignorance of those requirements, either of which was sufficient to charge him with knowledge of the falsity of the claims in question.").

Jiaqi Zhang testified in her deposition that she believed—and continues to believe—that the certification referred to Chinese-owned subsidiaries and not parent companies. JAF 47. Relator produces no controverting evidence affirmatively showing that Jiaqi Zhang had actual knowledge that the certifications were false.[8] Relator does, however, provide evidence from which a factfinder might conclude that Defendants should have been aware that eligibility for the PPP loans were dependent on whether the applicant's owners were Chinese entities. First, the language of the certification—and the statute it tracks—unambiguously if inartfully refers to the owners of the applicant. Second, in the same application requiring the declaration, applicants are required to "[l]ist all owners of 20% or more of the equity of the Applicant." JAF 35, 40; JAE G at 1, JAE H at 1. Third, an applicant must answer whether it, or any of its owners were debarred, or whether the applicant or "any individual owning 20% or more of the equity of the Applicant" were subject to criminal charges. JAE G at 1–2, JAE H at 1–2. The application pays little attention to the applicant's subsidiaries.

This context, in addition to the plain language of the declaration, could permit a reasonable factfinder to determine that Jiaqi Zhang was deliberately indifferent or reckless in concluding that the certification referred to Chinese subsidiaries rather than parent companies. But on this record, the Court cannot conclude that every factfinder necessarily would find scienter. The certification's language, while unambiguous, was not a model of clarity, and Relator does not identify any definitive interpretation of the statute on which Relator could have relied. Relator's circumstantial evidence that might support a finding of bad faith is not so strong that the Court may disregard Zhang's consistent testimony of her understanding of the language. On this record, genuine issues of material fact preclude summary judgment.

C.

Defendants' entire argument on materiality is a restatement of their falsity argument—that the certification had nothing to do with Chinese parent companies.

[8] Relator points to circumstantial evidence that might affect a factfinder's assessment of Jiaqi Zhang's credibility—namely, her assertions that she did not know how certain information was included in the applications she submitted and her response to the lending bank's email inquiry about XLD Group's ownership structure in which she omitted the Chinese entity from her answer.

As the Court has explained, Defendants' reading is wrong. Defendants' misstatements were also material.

Under the False Claims Act, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The Supreme Court clarified in *Universal Health Servs., Inc. v. United States (Escobar)* that the materiality standard is "demanding" and that "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." 579 U.S. 176, 194 (2016). Instead, materiality "looks to the effect on the likely or actual behavior" of the government. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1019 (9th Cir. 2018) (quoting *Escobar*, 579 U.S. at 193).

The Ninth Circuit in *Rose* identified three factors that could show materiality of the claim: (1) whether payment was conditioned on compliance with the statutory, regulatory, or contractual requirement; (2) the government's past enforcement activities; and (3) the magnitude of the violation. *Rose*, 909 F.3d at 1020; *see also UPPI LLC v. Cardinal Health, Inc.*, No. 21-35905, 2022 WL 3594081, at *3 (9th Cir. Aug. 23, 2022) (describing the Ninth Circuit's test following *Rose*).[9]

The first factor, whether payment was conditioned on compliance, weighs strongly in favor of materiality. *See Rose*, 909 F.3d at 1020 ("After *Escobar*, that triple-conditioning of Title IV funds on compliance with the incentive compensation ban may not be sufficient, without more, to prove materiality, but it is certainly probative evidence of materiality.") The Small Business Association provided a declaration stating that failing to certify compliance would render an entity ineligible for the loan. JAF 48, JAE D ("An applicant that could not or would not make this certification would not be eligible to receive a second-draw

[9] *Escobar* and *Rose* involved the implied false certification theory, under which nondisclosure of a claimant's noncompliance with statutory or regulatory requirements makes a claim false. Here, Defendants made an express false certification when they stated that they were not Chinese-owned. Where the government not only excluded Chinese-owned businesses from eligibility for the PPP loans by statute but also required express certification of non-ownership by Chinese entities as part of the loan application, materiality appears obvious. Nevertheless, in the absence of any identified authority limiting *Escobar* and *Rose* to implied false certification cases, the Court addresses all three *Rose* factors.

PPP loan."). The uncontroverted evidence thus shows that the government would not have loaned Defendants the money had it known that they were indirectly owned by a Chinese entity.

The third factor, the magnitude of the violation, also weighs heavily in favor of Relator. Sichuan Singlida—a Chinese entity—owned approximately 95 percent of XLD Group and 89 percent of XLD Century, far exceeding the 20 percent threshold that made Defendants statutorily ineligible for the PPP loans. JAF 18–23. Based on their false certifications, Defendants received a total of $4 million, and the United States paid in excess of $4.12 million for the loans and related fees and interest. This is not a "minor or insubstantial" violation. *See Rose*, 909 F.3d at 1022 (explaining that providing cups of coffee or $10 gift cards would not be material FCA violation but that compensation of up to $30,000 and a trip to Hawaii was material).

Neither party presents any evidence with respect to the second factor—the government's past enforcement of this provision. Given the rapid enactment of the PPP program in response to the COVID-19 pandemic, this is unsurprising. In the absence of any indication that the government ever knowingly authorized the loan of PPP funds subject to the certification requirement to Chinese-owned businesses, this factor is neutral. *Cf. United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 834 (6th Cir. 2018) (finding that district court improperly drew negative inference from the absence of alleged past government action when dismissing FCA claim on Rule 12(b)(6) motion).

Defendants produce no evidence suggesting that their loans would have been granted had they disclosed their indirect ownership by Sichuan Singlida. In light of the overwhelming uncontroverted evidence that having at least 20 percent Chinese ownership made Defendants statutorily ineligible for the loans, that they were overwhelmingly owned by a Chinese company, and that by misrepresenting their eligibility they obtained millions of dollars in government money, no reasonable factfinder could find that the false statements were immaterial. Accordingly, Relator is entitled to summary adjudication on materiality.

D.

The fourth element, disbursement or loss of government funds, is not genuinely in dispute. Defendants each applied for and received a $2 million loan under the PPP, for which the government paid both the full loan amount and a small interest payment to the bank. JAF 55–58. The government then forgave the

loans, incurring additional $60,000 fees. JAF 59. Accordingly, Relator is entitled to summary adjudication on the element of disbursement and loss.

E.

Relator next requests that this Court determine damages as a matter of law. Because fact issues about Defendants' scienter preclude summary judgment on liability, it would be premature to make a determination on damages. Accordingly, Relator is not entitled to summary adjudication on the issue of damages at this time.

IV.

Defendants move for summary judgment based on the public disclosure bar, which requires a court to "dismiss an action or claim under this section, *unless opposed by the Government*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . from the news media." 31 U.S.C. § 3730(e)(4) (emphasis added). The government may "veto a dismissal" under the public disclosure bar by objecting to this affirmative defense. *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013). After the parties moved for summary judgment, the government exercised that right and opposed the public disclosure bar defense. Dkt. No. 70. Given the government's opposition, the Court cannot dismiss the case on these grounds. *See United States ex rel. Turner v. Dynamic Med. Sys., LLC*, 17-CV-01757, 2022 WL 20804350, at *11–12 (E.D. Cal. Jan 24, 2022) (relying on *May* and collecting cases uniformly rejecting defense when opposed by the government). Accordingly, Defendants' cross-motion for summary judgment is denied.

V.

Relator's motion for summary judgment is granted in part. Relator has established as a matter of law that Defendants' certifications were false, that they were material, and that they caused the government to disburse and lose funds. Relator's motion is otherwise denied, as is Defendants' motion for summary judgment.

Date: May 8, 2024

Stanley Blumenfeld, Jr.
United States District Judge