UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States ex rel. GNGH2, ) | Case No. 2:22-cv-05514-SB(PVCx) |
| ) | **Final Pre-Trial Conference Order** |
| Plaintiff-Relator, ) | |
| ) | |
| v. ) | |
| ) | |
| XLD Century LLC and XLD ) | Pre-Trial Conference: June 28, 2024 |
| GROUP LLC, ) | Trial Date:  July 8, 2024 |
| ) | Judge:  Hon. Stanley Blumenfeld Jr. |
| Defendants. ) | |
| _____) | |

Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS ORDERED:

**1.    The parties are:**

Plaintiff-Relator:  GNGH2, Inc.

Defendants:  XLD Century LLC; XLD Group LLC.

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

**The pleadings which raise the issues are:**

Complaint (Docket No. 1)

Answer (Docket No. 25)

**2.     Federal jurisdiction and venue are invoked upon the grounds:**

Plaintiff-Relator asserts claims under 31 U.S.C. § 3729 et seq., the False Claims Act.  Accordingly, there is Federal Question Jurisdiction under 28 U.S.C. § 1331.  Further, the False Claims Act provides for venue in any district where any Defendant transacts business.  *See* 31 U.S.C. § 3732(a).  In this case, Plaintiff-Relator's claims arise from the Defendants' ownership of hotels in the Central District of California, specifically the LAX Marriott in Los Angeles, California and the Torrance Marriott in Torrance, California.

**3.     The trial is estimated to take**

Plaintiff's estimate:  2 1/2 hours

Defendant's estimate:  4  hours

**4.     The trial is to be a non-jury trial.**

At least seven (7) days prior to the trial date the parties shall lodge and serve by e-mail, fax, or personal delivery the findings of fact and conclusions of law the party expects the Court to make upon proof at the time of trial as required by L.R. 52-1.

**5.     The following facts are admitted and require no proof:**

1.     With respect to the PPP Disaster Relief Loan of Defendant XLD Group LLC which is at issue in this matter, the United States made payments of $2,000,000 in principal; $12,547.95 in interest; and $60,000 in processing fees for a total of $2,072,547.95.

2.     With respect to the PPP Disaster Relief Loan of Defendant XLD Century LLC which is at issue in this case, the United States made payments of $2,000,000

in principal; $13,808.22 in interest; and $60,000 in processing fees for a total of $2,073,808.22.

3.  XLD Group N.A. Real Estate Development Inc. is a California corporation.

4.  Grand Tripod LLC is a California limited liability company.

5.  Defendant XLD Group LLC ("XLD Group") is a California LLC.

6.  Defendant XLD Century LLC ("XLD Century") is a California LLC.

7.  A requirement to receive a second-draw PPP loan is that the borrower must complete and submit Form 2483-SD (the "Application Form").

8.  The Application Form contains a number of certifications which must be initialed by the borrower, stating: The authorized representative of the Applicant must certify in good faith to all of the below by initialing next to each one.

9.  One of the certifications which must be initialed by the borrower (the "PRC Certification") states as follows:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; . . .

10. The authorized representative of XLD Group initialed the PRC Certification on its Application Form.

11. This initialing was done in order to receive the XLD Group Loan.

12. XLD Group did receive the $2,000,000 loan as a result of its submission of an Application Form.

13. The XLD Group Loan was eventually forgiven.

14. The authorized representative of XLD Century initialed the PRC Certification on its Application Form.

15. This initialing was done in order to receive the $2,000,000 loan.

16. XLD Century did receive the $2,000,000 loan as a result of its submission of an Application Form.

17. The XLD Century Loan was eventually forgiven.

18. The ultimate parent entity of XLD Group is Sichuan Xinglida.

19. The ultimate parent entity of XLD Century is Sichuan Xinglida.

20. Sichuan Xinglida is a People's Republic of China entity which is based in the People's Republic of China ("PRC").

21. The authorized representative of XLD Group who completed the Application Form was Jiaqi Zhang ("Ms. Zhang").

22. The authorized representative of XLD Century who completed the Application Form was Ms. Zhang.

23. Ms. Zhang is Vice President of XLD Group.

24. Ms. Zhang is Vice President of XLD Century.

25. At the time she completed the Application Form of XLD Group, Ms. Zhang was aware that XLD Group was ultimately owned by a PRC company.

26. At the time she completed the Application Form of XLD Century, Ms. Zhang was aware the XLD Century was ultimately owned by a PRC company.

27. XLD Group LLC owns Torrance Marriott Hotel, which is "operated by Marriott Management."

28. XLD Century LLC owns LAX Marriott Hotel, which is "operated by Marriott Management."

29.  Sichuan Xinglida fully owns XLD U.S. Top LLC, which fully owns XLD N.A. Real Estate Inc. and XLD Investment.

30.  XLD N.A. Real Estate Inc. owns 95 percent of Defendant XLD Group.

31.  XLD Investment owns approximately 89 percent of Defendant XLD Century.

Further, the parties agree that the following testimony of Umpqua Bank (the lending bank in respect of the loans at issue in this matter) and the accompanying Exhibit U1 shall be deemed part of the record at trial:

Question: Okay. All right. Now I'm looking to the first page of the document. Well, let me ask you this: You see on the document, U1, there's a whole series of fields; right? There's a -- there's an area where someone can enter, it says NAICS code, and then there's a field where someone can enter average monthly payroll. There's all these things that appear to be --
e-mail address and so on. Do you see all that?

Answer: Yes, I do.

Question: Okay. Now, in terms of the application process, would that information be -- who would enter that information into the form?

Answer: The application form was completed by the applicant.

Question: Okay. Did the bank put any of that information into the form?

Answer: No, the bank did not.

**6. The following facts, though stipulated, shall be without prejudice to any evidentiary objection:**

None, although each side reserves the right to argue that the Court should assign no significance to any admitted fact.

**7. Plaintiff(s):**

**(a) Plaintiff plans to pursue the following claims against the following defendants:**

Claim 1: Defendant XLD Century LLC violated the False Claims Act.

Claim 2: Defendant XLD Group LLC violated the False Claims Act.

**(b) The elements required to establish Plaintiff's claims are:**

Plaintiff is required to establish falsity, scienter, materiality, and causation. All of these except for scienter were resolved on summary judgment. Accordingly, Plaintiff is required to establish scienter (and damages).

**(c) In brief, the key evidence Plaintiff relies on for each of the claims is**:

1. The relevant application forms contained, among other things, an explicit certification regarding the PRC-ownership issue which certification was initialed by the Defendants' authorized representative.

2. The application materials manifest primary interest in the applicant's ownership as opposed to the applicant's holdings.

3. On the relevant application forms and in email correspondence, the Defendants' authorized representative was asked three times to supply information concerning the Defendants' ownership. Each time, the representative provided incomplete and false information which had the effect of concealing the identity of their ultimate PRC owner.

4. At deposition, the Defendants' authorized representative provided inherently non-credible testimony, for example denying that she had inserted information into the application form and speculating that it had been inserted "electronically."

**Defendant(s):**

**(a) Defendant plans to pursue the following counterclaims and affirmative defenses:**

1. The certification was read by Ms. Zhang as making ineligible entities that had Chinese subsidiaries.

2. The application materials that Relator claims manifest primary interest in the applicant's ownership as opposed to the applicant's holdings actually manifest primary interest in applicant and its related companies, including subsidiaries, as to their misconduct or negative history and were not part of the certifications.

3. On the relevant application form, there was a question asking for companies that own 20% or more equity, but the question did not ask for ultimate and indirect owner. No Chinese company owned 20% or more equity of Defendants.

With respect to the e-mail exchange at issue, the email was confusingly written, the request for "multiple layers of corporations, partnerships, and trusts" is buried among texts in italicized font size 10 without any break between the requests for individual owners' personal information requested.

The e-mail begins with the request to provide the *"individual owners of the business,"* and continues with the request for the names, address, SSN's, prior criminal record, and bankruptcy and ends with the request for bankruptcy and criminal record without a break between any of the requests. Additionally, this e-mail exchange occurred after the application was already submitted and should not be admitted.

4. At deposition, Zhang did not "speculate" about the information being inserted electronically. Rather, she testified that she provided requested information "to the online portal," but that Ms. Zhang "did not know why" she was shown in the electronically completed form as the 100% owner.

**(b) The elements required to establish Defendant's counterclaims and affirmative defenses are:**

Not applicable

**(c) In brief, the key evidence Defendant relies on for each counterclaim and affirmative defense is:**

Not applicable

**Third Party Plaintiffs and Defendants:**

Not applicable

**8.     In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:**

Scienter, damages

**9.     All discovery is complete.**

**10.    All disclosures under F.R.Civ.P. 26(a)(3) have been made. The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:**

**Plaintiff objects to Exhibit Nos.**     None

**Defendant objects to Exhibit Nos.**    5/U5 (Zhang Email)

**The objections and grounds therefor are:**

This e-mail exchange at issue occurred *after* the Application was submitted. The focus in FCA is on "what the defendant thought when submitting the false claim – not what the defendant may have thought after submitting it." *United States ex rel. Schutte v. Supervalu Inc.* (2023) 588 U.S. 739, 752.)

Accordingly, the exhibit should not be admitted because it is not relevant to the issue of scienter (at the time the application is submitted) and is unduly prejudicial.

If the exhibit were to be admitted, the portions of the deposition transcript

Relator proposes be admitted are not the complete portion on the subject of the e-mail exchange. All portions, not the selected portions by Relator, related to the e-mail should be read into the record.

**11. Witness lists of the parties have been filed with the Court. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).**

**Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:**

Zhang, Sandoval

**Defendants object to the portion of testimony Ms. Zhang's deposition:**

The portion concerning the e-mail exchange with the bank *after* the Application was submitted. (69:8-73:23) The focus in FCA is on "what the defendant thought when submitting the false claim – not what the defendant may have thought after submitting it." *United States ex rel. Schutte v. Supervalu Inc.* (2023) 588 U.S. 739, 752.)

Accordingly, the exhibit should not be admitted because it tends to show, if anything, what Ms. Zhang may have thought after submitting the application. It is therefore not relevant to the issue of scienter (at the time the application is submitted) and is unduly prejudicial.

If the portion of Ms. Zhang's testimony are allowed to be read into the record, it should be the complete portion, not just the selected portion chosen by Relator.

**12.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:**

None

**13.    Bifurcation of the following issues for trial is ordered.**

The position of Plaintiff-Relator is that in the event Plaintiff prevails at trial, the issues of attorneys fees and relator share should be taken up at a later date.

**14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.**

Dated:_____ 20_____

_____

Approved as to form and content.

Attorney for Plaintiff-Relator

/s/ David Abrams

_____

Attorney for Defendants

/s/ Dana Moon

_____


David Abrams hereby attests that by email dated June 13, 2024 Defendants' counsel indicated that she concurred in this document and consents to its filing.