# In The Matter Of:

*U.S. ex rel. GNGH2, Inc. vs.*
*XLD CENTURY LLC and XLD GROUP LLC*

---

*PATRICIA SANDOVAL*
*March 19, 2024*

---

*Challe, Fisher & Morfin*
*1828 South Street*
*Redding, California  96001*
*(530)246-0942*
*cfmdepos@att.net*

Original File P. Sandoval.txt
**Min-U-Script® with Word Index**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

---o0o---

United States ex rel.
GNGH2 Inc.

          Plaintiff,

vs.                          Case No.:
                                 2:22-cv-05514-SB(PVCx)

XLD CENTURY LLC and
XLD GROUP LLC,

          Defendant(s).

_____/

VIDEOCONFERENCE DEPOSITION OF PATRICIA SANDOVAL

Tuesday, March 19, 2024

2:59 p.m. Pacific Time

Reported by:  STACY A. SHORT, CSR NO. 7446

```
 1                    A P P E A R A N C E S

 2

 3       For the Plaintiff UNITED STATES EX REL. GNGH2 INC.:

 4            DAVID ABRAMS
              (present via Zoom videoconference)
 5            P.O. Box 3353 Church Street Station
              New York, NY  10008
 6            PH:  212-897-5821
              EM:  dnabrams@wjlf.org
 7

 8
         For the Defendants XLD CENTURY LLC and XLD GROUP LLC:
 9
              MOON & DORSETT, PC
10            BY:  DANA MOON
                   (present via Zoom videoconference)
11            445 S. Figueroa Street, Suite 2900
              Los Angeles, CA  90071
12            PH:  213-380-1526
              EM:  dm@danamoon.com
13

14
         Appearing on behalf of UMPQUA BANK and the deponent,
15       PATRICIA SANDOVAL:

16            MILLER NASH LLP
              BY:  BENJAMIN TARCZY
17                 (present via Zoom videoconference)
                   JOSHUA SASAKI
18                 (present via Zoom videoconference)
              340 Golden Shore, Suite 450
19            Long Beach, CA  90802
              PH:  562-435-8002
20            EM:  benjamin.tarczy@millernash.com

21

22

23

24

25  ///
```

```
 1                        I N D E X

 2


 3


 4                 INDEX OF EXAMINATION(S)

 5

 6   WITNESS:  PATRICIA SANDOVAL                        PAGE

 7       Examination by Mr. Abrams. . . . . . . . . . .    6
 8       Examination by Ms. Moon. . . . . . . . . . .     42
 9                        ---o0o-
10

11

12               INDEX OF EXHIBIT(S)

13

14   EXHIBIT(S)              DESCRIPTION               PAGE

15
     Exhibit U1        Paycheck Protection Program
16                     Second Draw Borrower Application
                       Form for Applicant XLD Group LLC
17                     (four pages; Bates stamped XLD
                       001 through XLD 004)            6, 23
18

19   Exhibit U2        Paycheck Protection Program
                       Second Draw Borrower Application
20                     Form, Applicant XLD Century LLC
                       (four pages; Bates stamped GNGH2
21                     550 through GNGH2 553)           6, 30

22

23   Exhibit U3        Letter from Umpqua Bank dated
                       1/7/2022 Re: Your Loan Account
                       Ending in XXXXX5539 XLD Group
24                     LLC
                       (one page; Bates stamped GNGH2
25                     313)                             6, 34
```

```
1                INDEX OF EXHIBIT(S) (continued)

2

3    EXHIBIT(S)                DESCRIPTION                PAGE

4
        Exhibit U4        Letter from Umpqua Bank dated
5                         12/16/2021 Re: Your Loan Account
                          Ending in XXXXX6622 XLD Century
6                         LLC
                          (one page; Bates stamped GNGH2
7                         498)                            6, 35

8
        Exhibit U5        E-mail dated 4/5/2021 from Becky
9                         Zhang to Amanda Jay Re: XLD Group
                          LLC - Second Draw Loan
10                        (one page; Bates stamped GNGH2
                          375)                            6, 36
11

12       Exhibit U6       Plaintiff-Relator's First Request
                          for Admissions, with attached
13                        SBA Procedural Notice
                          (16 pages)                      6

14

15       Exhibit U7       Plaintiff-Relator's Second Request
                          for Admissions, with attached
16                        Exhibit 1, Exhibit 2 and Exhibit 3
                          (16 pages)                      6

17

18       Exhibit U8       Subpoena to Testify at a Depo-
                          sition in a Civil Action, issued
19                        to Umpqua Bank, with attached
                          Proof of Service, Federal Rule of
20                        Civil Procedure 45(c),(d),(e), and
                          (g) page, and Subject of 30(b)(6)
21                        Deposition
                          (five pages)                   17
22

23                        ---oOo---

24

25   ///
```

1               INDEX OF UNANSWERED QUESTION(S)

2

3   QUESTION(S)                                    PAGE   LINE

4

        "Okay.  So just so we're clear, you don't
5   know why you didn't research that issue;
        is that right?"                              22     17
6

7       "Why not?"                                   37      3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   ///

PATRICIA SANDOVAL

1                VIDEOCONFERENCE DEPOSITION OF PATRICIA SANDOVAL,

2      taken on behalf of the Plaintiff, appearing remotely via

3      Zoom videoconference from San Diego, California, on

4      Tuesday, the 19th day of March, 2024, commencing at the

5      hour of 2:59 p.m. Pacific Time, before STACY A. SHORT, a

6      Certified Shorthand Reporter of the State of California,

7      License No. 7446, taken pursuant to Subpoena.

8                         ---o0o---

9

10            (NOTE:  Exhibits U1 through U7 were marked

11         for identification prior to start of deposition.)

12

13                    PATRICIA SANDOVAL,

14         appearing via Zoom videoconference, and being

15         first duly sworn remotely by the court reporter,

16            was examined and testified as follows:

17

18            THE WITNESS:  I do.

19            THE REPORTER:  You can put your hand down.

20

21               EXAMINATION BY MR. ABRAMS

22            MR. ABRAMS:  Q.  Good afternoon, Ms. Sandoval.

23      My name is David Abrams.  I'm an attorney who's

24      representing the plaintiff, GNGH2 Inc., in a case which

25      is pending in Los Angeles Federal Court, and, you know,

## PATRICIA SANDOVAL

1  first of all, I realize that you're here on behalf of

2  Umpqua Bank, a third party, so I wanted to thank you for

3  cooperating with this process and allowing me to question

4  you.

5       Now, I'm here of course to ask you some

6  questions, and the first question I have for you is have

7  you ever been deposed before?

8     A.    I have not.

9     Q.    Okay.  So for the record then, let me go over the

10  rules of the deposition even though I'm sure you've been

11  prepared for this.

12       Do you understand that my job is to ask you

13  questions, and your job is to answer them?  Do you

14  understand that?

15    A.    Yes.

16    Q.    Okay.  And do you understand that even though

17  we're not in court, you've been given an oath, and you

18  have a legal obligation to tell the truth today?  Do you

19  understand that?

20    A.    Yes.

21    Q.    Okay.  And since the court reporter is taking

22  down everything that we say, you have to give verbal

23  answers to questions.  In other words, you can't answer

24  questions by shaking your head, by saying "uh-huh" or

25  anything like that.  Do you understand?

**PATRICIA SANDOVAL**

1        A.    Yes.

2        Q.    Okay.  Now, also, we can't talk at the same time

3   since the court reporter is taking down everything we say,

4   so if I'm in the middle of asking a question, and even if

5   you sort of know where I'm going with it, I would ask that

6   you wait to answer until I'm done with the question.  Do

7   you understand?

8        A.    Yes.

9        Q.    And similarly, if you're answering a question,

10  I'll try not to interrupt you, so that way the court

11  reporter can take down everything we say.  Okay?

12       A.    Yes.

13       Q.    All right.  Now, if you don't understand a

14  question, I would ask you to tell me so, and I'll try to

15  rephrase it.  Okay?

16       A.    Yes.  I understand.

17       Q.    So that way if I ask you a question and you

18  answer it, I'm going to assume that you understood the

19  question and that you're answering to the best of your

20  ability.  Okay?

21       A.    Yes.

22       Q.    All right.  Now, are you under the influence of

23  any drugs, alcohol, or medication which would affect your

24  ability to testify truthfully today?

25       A.    No, I am not.

**PATRICIA SANDOVAL**

1    Q.    Okay.  And can you tell me the name of your
2    current employer?
3    A.    My current employer is Umpqua Bank.
4    Q.    Okay.  And what's your position with Umpqua Bank?
5    A.    I am a vice-president/SBA compliance
6    administrator.
7    Q.    Vice-president -- can you say that again, ma'am?
8    A.    Yes.  Vice-president/SBA compliance
9    administrator.
10    Q.    SBA compliance.  And how long have you held that
11    position, ma'am?
12    A.    I have been in that position approximately ten
13    years.
14    Q.    Okay.  And how long have you -- and that's a
15    full-time position?
16    A.    Yes, it is.
17    Q.    Okay.  And how long have you been with Umpqua
18    Bank?
19    A.    I have been with Umpqua Bank -- Umpqua Bank for
20    20 years.
21    Q.    20 years.  Okay.  And are you -- do you work out
22    of a particular office of Umpqua Bank?
23    A.    Currently I'm working remotely.
24    Q.    Okay.  So that means, when you say you're working
25    remotely, you work from home?

PATRICIA SANDOVAL

1       A.    Yes, that is correct.

2       Q.    Okay.  And can you tell me what city and state

3   you reside in?

4       A.    Yes.  I live -- it's an unincorporated community

5   of Bonita, California.

6       Q.    I'm sorry.  Say that again.

7       A.    I live in Bonita, California.

8       Q.    Can you spell that?

9       A.    Yes.  It's B-o-n-i-t-a.

10          MR. ABRAMS:  Okay.  Counselor for the bank, you

11   know, I don't want to pry into her personal life, but I

12   need to have an address in case she needs to be

13   subpoenaed, so are we able to give me an address?

14          MR. TARCZY:  And Counsel, we can meet and confer

15   on that after that, but we'll -- we'll accept a subpoena

16   on behalf of the bank.

17          MR. ABRAMS:  Okay.  Because what I'm concerned

18   about is the -- the bank is located in the northwest,

19   which of course is very, very far from Los Angeles, but

20   the witness just testified that she lives -- I'm trying to

21   find it on a map -- Bonita, California.

22          Let's see.  And that looks like it's -- I'm not

23   sure.  That's not that far from Los Angeles, so I guess

24   what I would ask, if you could just represent on the

25   record that if we need to subpoena her, you'll accept the

PATRICIA SANDOVAL

1  subpoena as if it had been brought to her address in

2  Bonita.  Is that okay?

3      MR. TARCZY:  Yeah.  We can -- we can stipulate to

4  that.

5      MR. ABRAMS:  Okay.  That -- that -- that would be

6  great.

7      Q.  (By Mr. Abrams) Fine.  And you've -- how long

8  have you been working remotely, ma'am?

9      A.  I have been working remotely for four years.

10     Q.  I see.  And you intend to continue doing so for

11 the foreseeable future?

12     A.  Yes.

13     Q.  Okay.  All right.  Now, can you briefly describe

14 your job duties for me?

15     A.  Yes.  I'm responsible for supporting our business

16 unit with loan compliance related functions.

17     Q.  Can you just give me, without getting into too

18 much detail, like an example of what that entails?

19     A.  Yes.  That can include reviewing loan documents,

20 maintaining some loan systems, a variety of functions.

21     Q.  Okay.  And you said -- you mentioned SBA

22 compliance, so is this like small business loans and PPP

23 loans and things like that?

24     A.  Yes, that is correct.

25     Q.  Okay.  All right.  So you're familiar with the

**PATRICIA SANDOVAL**

1  second draw PPP disaster relief program?

2      A.    Yes, I am.

3      Q.    All right.  And are you able to describe that

4  program in a few words?

5      A.    It was a government program that was offered to

6  assist small business companies during the COVID pandemic.

7      Q.    Okay.  And was Um- -- I take it Umpqua Bank was

8  involved in that program?

9      A.    Yes, Umpqua Bank participated in that program.

10     Q.    Okay.  And how did Umpqua Bank participate?

11     A.    Umpqua Bank was a lender of PPP loans.

12     Q.    Okay.  So are you able to describe in general

13  terms the interplay between an applicant for a PPP loan, a

14  lending bank such as Umpqua, and the SBA?

15     A.    Can you -- can you pose that question again,

16  please?

17     Q.    Okay.  Well, in terms of the -- the flow of the

18  money involved, can you tell me how it would work with --

19  starting with what an applicant would do and how the bank

20  would get involved and how the SBA would be involved?

21         MR. TARCZY:  I'm going to object to the extent it

22  calls for speculation and is an incomplete hypothetical,

23  but if you understand the question, you can answer,

24  Ms. Sandoval.

25         THE WITNESS:  Yes, I'll -- I'll answer to the

**PATRICIA SANDOVAL**

1   best of my ability.  Applicants would apply for the PPP

2   loan.  The bank receives the information from the

3   applicant and reviews the information and then submits the

4   information to the SBA administration and then receives

5   approval from the SBA and then disburses the loan proceeds

6   to the applicant.

7        MR. ABRAMS:  Q.  Okay.  And would anything happen

8   after that?

9        A.   The loan is then maintained by the lender.

10        Q.   Okay.  Well, typically would a borrower pay back

11   that loan?

12        A.   That is correct.  Typically a borrower would --

13   would pay back the loan.

14        Q.   Okay.  Well, were any of the loans forgiven?

15        A.   Yes, some of the PPP loans were forgiven.

16        Q.   Okay.  And would you say that that's a majority

17   of the loans or a minority, or roughly how -- what

18   percentage were forgiven?

19        A.   I would not be able to answer that.

20        Q.   Okay.  And if a loan was forgiven, what would

21   happen in terms of money?  Who would pay the bank, if

22   anyone?

23        A.   The loans that are forgiven are paid by the SBA.

24        Q.   Okay.  Now, in terms of the PPP, was -- was there

25   an application process for PPP loans?

PATRICIA SANDOVAL

1      A.    Yes, there was an application process.

2      Q.    Okay.  And were there application forms?

3      A.    Yes, there were forms.

4      Q.    Okay.  So can you just tell me in general terms

5  what happened in terms of the application and the forms?

6          MR. TARCZY:  And same objections as to

7  speculation and potentially calling for an incomplete

8  hypothetical.  But you can answer the question if you

9  understand.

10         MS. MOON:  Objection.  Vague and ambiguous and

11 compound.

12         MR. ABRAMS:  Q.  Ma'am, did you understand the

13 question?

14     A.    I'm sorry.  I did not understand the question.

15     Q.    Okay.  Well -- well, let me put the question a

16 different way.

17         What was the role of the application forms in the

18 loan application process?

19     A.    The role of the application was to initiate the

20 loan process and obtain information from the applicant.

21     Q.    I see.  And who would complete these application

22 forms?

23         MR. TARCZY:  Objection to the extent it calls for

24 speculation and is an incomplete hypothetical.  But you

25 can answer.

## PATRICIA SANDOVAL

1              THE WITNESS:  Small business borrowers would

2       complete the applications.

3              MR. ABRAMS:  Q.  Okay.  And would that be done in

4       paper form or electronically, generally speaking?

5       A.    The PPP program was done electronically.

6       Q.    Okay.  And so the applicant would complete the

7       form on a computer screen?

8       A.    I don't know that I'd be able to answer that

9       question.  It was done electronically.

10      Q.    Okay.  Well, if it wasn't done using a computer

11      screen, how else would it have been done?

12             MS. MOON:  Objection.

13             MR. TARCZY:  Objection to the extent it calls --

14      you can go, Ms. Moon.

15             MS. MOON:  Objection.  Vague and ambiguous.

16             MR. TARCZY:  Objection.  Calls for speculation.

17      But you can answer if you know.

18             THE WITNESS:  Applicants could have used a phone

19      or a desktop computer.

20             MR. ABRAMS:  Q.  I see.  And did -- would the

21      applicants sign the form?

22      A.    Yes, I believe so.

23      Q.    Okay.  Would that be done electronically or some

24      other way?

25      A.    Yes, those would be -- have been done

**PATRICIA SANDOVAL**

```
 1   electronically.
 2        Q.    Okay.  And the applicants would submit the forms?
 3        A.    That is correct.
 4        Q.    All right.  And that would be done
 5   electronically?
 6        A.    Yes.
 7        Q.    Okay.  Now, if -- if an applicant failed to
 8   electronically sign and submit the application form, would
 9   they get the money?
10            MR. TARCZY:  Objection.  Calls for speculation,
11   vague and ambiguous, incomplete hypothetical.  But you can
12   answer if you know.
13            THE WITNESS:  I don't know the answer to that
14   question.
15            MR. ABRAMS:  Q.  You don't know, ma'am.  Is that
16   a fact?
17            MS. MOON:  Objection.  Argumentative.
18            MR. TARCZY:  Yeah.  Objection.  Asked --
19            MR. ABRAMS:  Q.  Are you say- --
20            MR. TARCZY:  -- and answered as well.
21            MR. ABRAMS:  Q.  Are you saying you don't know?
22   Let me ask you this:  What did you do to prepare for
23   today's deposition?
24            MR. TARCZY:  Objection to the extent it calls for
25   attorney-client privileged communication.  You can answer
```

**PATRICIA SANDOVAL**

1  the question except to the extent it involves discussions

2  between your counsel and you.

3          THE WITNESS:  Could you ask the question again,

4  please?

5          MR. ABRAMS:  Q.  What did you do to prepare for

6  today's deposition?

7          MR. TARCZY:  And same objections, but you can

8  answer to the extent it doesn't involve discussions

9  between counsel and yourself.

10          THE WITNESS:  I reviewed the -- the file, the

11  loan file.

12          MR. ABRAMS:  Q.  Okay.  And did you review the

13  deposition notice for the deposition?

14      A.  I cannot recall.

15      Q.  Okay.  Well, I'm going to mark it exhibit into

16  evidence, and we're going to go out of order,

17  unfortunately.

18          (Exhibit U8 was introduced and marked

19              for identification at this time.)

20          MR. ABRAMS:  This is going to be Exhibit 8, so

21  I'm going to put it up on the screen.  Just give me a

22  second.

23          THE REPORTER:  You said Exhibit 8; correct?

24          MR. ABRAMS:  Yep.  You don't have it.

25          THE REPORTER:  Okay.

**PATRICIA SANDOVAL**

1              MR. ABRAMS:  It's -- it's actually going to be

2      Exhibit U8.

3              THE REPORTER:  Thank you.

4              MR. ABRAMS:  Q.  All right.  You see the document

5      that's in front of you?

6          A.  Yes, I do.

7          Q.  Okay.  And have you ever seen this document

8      before?

9          A.  I have --

10             MS. MOON:  Counsel, is there -- I'm sorry.  Is

11     there more to this than this portion that you're showing?

12             MR. ABRAMS:  Q.  All right.  Ma'am, what you see

13     on the screen, have you seen this before?

14         A.  I have not.

15         Q.  Okay.  Well, I'm going to scroll through it and

16     represent to you that it's a subpoena that was served on

17     Umpqua Bank.  Okay.  Do you see it's five pages?

18         A.  Yes.

19         Q.  And you see I'm looking at Page 4 now of -- of

20     U8, and it says, "Subject of 30(b)(6) deposition"?

21         A.  Yes.

22         Q.  Okay.  So you see Paragraph 1?  I'm just going to

23     read it into the record, or I'm going to read the -- I'm

24     actually going to read the -- from -- from the top.

25             It says, "Pursuant to Rule 30(b)(6) of the

PATRICIA SANDOVAL

1    Federal Rules of Civil Procedure, Plaintiff-Relator

2    requests that a witness be supplied who is knowledgeable

3    about the following areas of inquiry."

4           You see that so far?

5    A.    Yes.

6    Q.    All right.  And then it says, "The application

7    process for second-draw PPP loans, including the issues of

8    what forms need to be completed by the recipient and how,

9    whether the application forms need to be signed, what

10   certifications are contained in the forms, whether such

11   certifications need to be initialed and/or agreed to in

12   order for the loan to issue, and what would happen in the

13   event that an applicant failed to sign, submit, initial,

14   or agree to any of the above."

15          Do you see that, ma'am?

16   A.    Yes, I do.

17   Q.    Okay.  So just so we're clear, as you sit here

18   today, you're not prepared to testify as to what would

19   happen in the event that an applicant failed to sign,

20   submit, initial, or agree on the application form; is that

21   correct?

22          MR. TARCZY:  Objection.  Misstates her testimony,

23   calls for speculation, calls for a legal conclusion.  It's

24   argumentative.  She is here to testify as to Category 1,

25   and she is the person most knowledge on that category.

PATRICIA SANDOVAL

1         MR. ABRAMS:  Q.  Are -- ma'am, are you able to
2   answer my question?  Are you able to testify about what
3   would happen in the event an applicant failed to sign and
4   submit an application form?
5         A.    Yes, I am.
6         Q.    You are.  Okay.  Great.  I'm really happy to hear
7   that because I was worried that we would have to come back
8   another day.
9         So let me ask you this then:  Are you able to
10  tell me -- and I'm talking about the second draw PPP
11  loans -- what would happen in the event that an applicant
12  failed to sign and submit an application form?
13        MR. TARCZY:  Objection.  It calls for
14  speculation.  It's vague.  It's ambiguous.  It lacks
15  foundation and is an incomplete hypothetical.  But you can
16  answer if you know the answer to that question.
17        THE WITNESS:  I -- I do not know the answer.
18        MR. ABRAMS:  Q.  Okay.  That's very, very
19  unfortunate.  So did you do any research to prepare for
20  today's deposition?
21        A.    No, I did not do research to prepare.
22        Q.    Did you -- did you speak to anyone in the -- in
23  the bank?
24        MR. TARCZY:  Objection to the extent it invades
25  the attorney-client privilege, but you can answer outside

**PATRICIA SANDOVAL**

1  of communications between you and counsel.

2            THE WITNESS:  No, I did not.

3            MR. ABRAMS:  Q.  Okay.  Did you do anything

4  besides review the loan files?

5       A.   No, I did not.

6       Q.   Okay.  And you've never seen this document

7  before, Exhibit 8 -- U8; is that correct?

8       A.   I have seen this document.

9       Q.   You have seen it.  When did you see it?

10      A.   I saw it about a week ago.

11      Q.   Okay.  And did you see Paragraph 1 that I was

12 reading to you?

13      A.   Yes.

14      Q.   Okay.  And -- and after you read Paragraph 1, I

15 take it you didn't do any research to find out what would

16 happen if an applicant failed to sign and submit an

17 application form?

18           MS. MOON:  Objection.  Vague and ambiguous.

19           MR. TARCZY:  Objection.  It's an incomplete

20 hypothetical.  It calls for speculation.  It lacks

21 foundation.  But you can answer if you know, Ms. Sandoval.

22           THE WITNESS:  Could you -- no, I -- I'm sorry.  I

23 don't understand your question.  Could you please --

24           MR. ABRAMS:  Q.  I'll -- sure.  I'll try to

25 rephrase it.

PATRICIA SANDOVAL

1              After you saw this document about a week ago, did
2    you do any research to find out what would happen if an
3    applicant failed to sign and submit an application form?
4        A.    No, I did not.
5        Q.    Okay.  Why not?
6              MR. TARCZY:  Objection to the extent it invades
7    the attorney-client privilege.  You can answer -- you can
8    answer it if you -- if you can answer the question.
9              MS. MOON:  Objection.  Not -- not really
10   calculated to lead to admissible evidence.  I don't know
11   what -- what Counsel is trying to go, but -- where he's
12   trying to go, but it's really not relevant, the answer to
13   the question posed.
14             MR. ABRAMS:  Q.  Ma'am, are you able to answer my
15   question?
16       A.    No, I'm not able to.
17       Q.    Okay.  So just so we're clear, you don't know why
18   you didn't research that issue; is that right?
19             MR. TARCZY:  Objection to the extent it invades
20   the attorney-client privilege.  I'm going to instruct the
21   witness not to answer that question.
22             MR. ABRAMS:  Q.  All right.  So let's put the
23   question a different way, ma'am.
24             So your testimony is that without disclosing
25   communications between you and your counsel, you're not

## PATRICIA SANDOVAL

1  able to tell me why you failed to do that research?  Is

2  that your testimony?

3      A.    That is correct.

4      Q.    Okay.  Well, is it true that the application

5  forms for the loan -- well, actually, you know, let's look

6  at that.  Let's go to Exhibit U1.

7          (Exhibit U1, marked for identification prior to

8      start of deposition, was introduced at this time.)

9              MR. ABRAMS:  Q.  All right.  I'm showing you

10 what's been marked as U1.  It's a four-page document.  You

11 should have had it in advance.  I'm just going to scroll

12 through it so you can see, and I'm going to ask you if you

13 recognize this document.

14     A.    Yes, I do.

15     Q.    All right.  What's this document?

16     A.    This is the second draw application form.

17     Q.    From -- from any particular applicant?

18     A.    The applicant looks to read on this document as

19 XLD Group LLC.

20     Q.    Okay.  Well, is this -- is this a record that

21 Umpqua Bank keeps in the ordinary course of business?

22     A.    Yes, it is.

23     Q.    Okay.  And are you able to identify it as such?

24     A.    Yes, I am.

25     Q.    Okay.  And based on your review of the record,

PATRICIA SANDOVAL

1   are you able to say that this is the application form for

2   the second draw PPP relief for XLD Group LLC?

3       A.   It appears to be.

4       Q.   Okay.  So -- well, you reviewed this document for

5   the deposition; correct?

6       A.   Yes.

7       Q.   Okay.  And you say it appears to be.  Are you

8   saying that you're concerned there might be fraudulent

9   or -- or there might be forged documents in Umpqua Bank's

10  files?

11          MR. TARCZY:  Objection.  Misstates her testimony,

12  lacks foundation, argumentative.  You can answer if you

13  have an answer to that question.

14          THE WITNESS:  I -- I did not say that.

15          MR. ABRAMS:  Q.  Okay.  Well, I'm a little

16  confused because you reviewed the bank's files before this

17  deposition, so you're able to say if -- you're able to say

18  if records are truly from the bank's files or not;

19  correct?

20      A.   Yes.

21      Q.   All right.  And this is an accurate

22  representation of what was in the bank's files; correct?

23      A.   That is correct.

24      Q.   Okay.  And so it's fair -- is it fair to say that

25  the bank's records show -- well, let me put the question a

**PATRICIA SANDOVAL**

1    different way.

2          According to the bank's records -- well, let's

3    scroll down.

4          And actually, well, just so I'm clear, according

5    to the bank's records, is this the second draw

6    application -- PPP application form for XLD Group LLC?

7          A.    Yes.

8          Q.    Okay.  Now, I'm going to scroll down to Page 3,

9    and you see that -- well, actually, let's go to the end.

10         The -- the bank used some kind of electronic

11   system to make sure that an authorized representative of

12   the bank [sic] was signing and submitting the application

13   forms; is that correct?

14         A.    That is not correct.

15         Q.    Okay.  So how did the bank verify that the

16   authorized representative of an applicant was signing and

17   submitting the application form?

18         A.    The applicant would certify that they were

19   authorized to represent the applicant.

20         Q.    Okay.  And there was an electronic system in

21   place, was there not, to make sure that it was really the

22   applicant applying for the loan?

23         A.    Yes, that is correct.

24         Q.    And what was that system called?

25         A.    That was DocuSign.

**PATRICIA SANDOVAL**

1    Q.   Okay.

2    A.   DocuSign.

3    Q.   And can you say anything about whether the bank's

4  general practice was to use this DocuSign system for

5  second draw PPP loans?

6    A.   Yes, that is correct.

7    Q.   So it was?

8    A.   Yes, the DocuSign system was used.  Yes.

9    Q.   Okay.  So if -- if a loan application is in your

10 files, can you conclude anything about whether DocuSign

11 must have been used for that loan application?

12    A.   I'm not sure I understand your question.

13    Q.   Was it the practice of the bank to accept loan

14 applications that were not -- or PPP second draw loan

15 applications that were not subject to this DocuSign

16 system?

17         MR. TARCZY:  Objection.  It's vague.  It's

18 ambiguous.  It's an incomplete hypothetical.  It calls for

19 speculation.  But you can answer if you know.

20         THE WITNESS:  For this program, the DocuSign

21 system was used.

22         MR. ABRAMS:  Q.  Okay.  Now, you see on Page 3

23 and 4 there's a series of -- well, do you see it says,

24 "The authorized representative of the Applicant must

25 certify in good faith to all of the below by initialing

PATRICIA SANDOVAL

1  next to each one"?  Do you see that?

2      A.   Yes, I do.

3      Q.   Okay.  And can you say anything, looking at this

4  document, about whether the applicant initialed next to

5  each certification?

6      A.   It looks like the applicant initialed next to

7  each certification.

8      Q.   Okay.  And was that a required part of the

9  process?

10     A.   Yes, it was.

11     Q.   Okay.  So if an applicant failed to certify to

12 each of these certifications, would the bank be able to

13 process the loan and give them the money?

14         MR. TARCZY:  Objection to the extent it's an

15 incomplete hypothetical, lacks foundation, and calls for

16 speculation.  But you can answer if you know.

17         THE WITNESS:  I don't know.

18         MR. ABRAMS:  Q.  Okay.  So you're not able to

19 say -- well, let's turn to the -- do you see the second

20 from the top on Page 4?

21     A.   Yes.

22     Q.   It says, "The Applicant is not a business concern

23 or entity..." and there's some stuff about the People's

24 Republic of China?

25     A.   Yes, I see that.

PATRICIA SANDOVAL

1    Q.   Okay.  So is it your testimony that you don't

2   know if that was a required certification in order for the

3   loan to be processed?

4    A.   All the certifications were required

5   certifications.

6    Q.   Okay.  So when you say that were -- they were

7   required, does that mean that it -- well, if -- if an

8   applicant failed to meet the requirements, would they get

9   the money?

10        MR. TARCZY:  Objection.  It's vague.  It's

11   ambiguous, lacks foundation, calls for speculation.  It's

12   an incomplete hypothetical.  But you can answer if you

13   know.

14        THE WITNESS:  Can you ask the question again?

15        MR. ABRAMS:  Q.  Well, let me ask -- let me step

16   back a second.

17        You testified that these certifications were a

18   required part of the process; correct?

19    A.   Yes.

20    Q.   Okay.  What does the word "require" mean to you?

21    A.   Something that is necessary as part of something

22   else.

23    Q.   Okay.  And if an applicant didn't do what was

24   necessary for the loan, would they get the money?

25        MR. TARCZY:  Objection.  It's vague.  It's

**PATRICIA SANDOVAL**

1   ambiguous, lacks foundation.  It calls for speculation.

2   It's an incomplete hypothetical.  But you can answer if

3   you know.

4         THE WITNESS:  I would say no.

5         MR. ABRAMS:  Q.  Okay.  All right.  Now I'm

6   looking to the first page of the document.  Well, let me

7   ask you this:  You see on the document, U1, there's a

8   whole series of fields; right?  There's a -- there's an

9   area where someone can enter, it says NAICS code, and then

10  there's a field where someone can enter average monthly

11  payroll.  There's all these things that appear to be --

12  e-mail address and so on.  Do you see all that?

13      A.   Yes, I do.

14      Q.   Okay.  Now, in terms of the application process,

15  would that information be -- who would enter that

16  information into the form?

17      A.   The application form was completed by the

18  applicant.

19      Q.   Okay.  Did the bank put any of that information

20  into the form?

21      A.   No, the bank did not.

22      Q.   Okay.  Okay.  I'm going to stop sharing this and

23  move on.  Well, actually -- let's see.  I'm going to move

24  on to Number 2.

25  ///

PATRICIA SANDOVAL

| | |
|---|---|
| 1 | (Exhibit U2, marked for identification prior to |
| 2 | start of deposition, was introduced at this time.) |
| 3 | MR. ABRAMS:  Q.  So I'm showing you what's been |
| 4 | marked -- hold on.  Let me just get it onto the screen. |
| 5 | I'm showing you what's been marked as U2, and I'm |
| 6 | going to ask if you recognize this document, and I'll flip |
| 7 | through it so that you can see.  Do you recognize this |
| 8 | document, ma'am? |
| 9 | A.  Yes, I do. |
| 10 | Q.  All right.  What is it? |
| 11 | A.  This is a second draw application form. |
| 12 | Q.  Okay.  And when you say second draw, you're |
| 13 | talking about second draw PPP loans? |
| 14 | A.  Yes. |
| 15 | Q.  Okay.  And according to the bank's records, who |
| 16 | was the applicant for this loan? |
| 17 | A.  The applicant on this document is XLD Century |
| 18 | LLC. |
| 19 | Q.  Okay.  And was this document kept in the ordinary |
| 20 | course of business of Umpqua Bank? |
| 21 | A.  Yes. |
| 22 | Q.  Okay.  And is this document a fair representation |
| 23 | of the application form submitted by the applicant in |
| 24 | connection with the PPP loan at issue? |
| 25 | A.  Yes. |

PATRICIA SANDOVAL

1      Q.   Okay.  And the same -- you know, I'm not sure I

2  asked you that question -- same question about U1, the

3  first one we looked at.

4      A.   Did -- did you ask me a question right now?

5      Q.   Yes.  The -- remember a minute ago I showed you

6  U1 --

7      A.   Yes.

8      Q.   -- which was -- so I had the same question about

9  U1.  Is that a fair -- a fair -- except of course of XLD,

10  if U1 is --

11          MS. MOON:  Objection.  Vague and ambiguous.

12          MR. ABRAMS:  Please let me finish my question,

13  Counselor.

14      Q.   (By Mr. Abrams)  Is U1 a fair representation of

15  the second draw PPP application submitted by XLD Group?

16          MS. MOON:  Objection.  Vague and ambiguous,

17  possibly compound.  I don't know what you mean.

18          MR. ABRAMS:  Q.  You want me to show you the

19  document, ma'am?  Would that help?

20      A.   No, that's not necessary.  So your -- your

21  question is if it's a fair --

22      Q.   Right.

23      A.   -- business --

24      Q.   Let me show you.  Let's go back to U1 for a

25  second.  Okay.  We talked -- we just talked about this

**PATRICIA SANDOVAL**

1    document.

2            Is this -- is this a fair representation of the

3    second draw PPP loan application submitted by XLD Group

4    LLC?

5        A.    Yes, it is.

6        Q.    Okay.  And turning back to U2, you recall that I

7    asked you a series of questions about U1.  Do you

8    remember?

9        A.    Yes.

10       Q.    Okay.  And if I were to ask you the same series

11   of questions about U2, would you give the same answers?

12           MS. MOON:  Objection.  Compound.

13           MR. TARCZY:  Yeah, I'm going to object to the

14   extent it's vague and ambiguous.  But if you understand,

15   Ms. Sandoval, you can answer the question.

16           THE WITNESS:  It would be the -- the same

17   answers.

18           MR. ABRAMS:  Q.  Okay.  Let me ask you this:  In

19   connection with the application process, did the bank --

20   did Umpqua Bank do anything to review the information

21   supplied or verify the information supplied in the

22   application forms?

23           MR. TARCZY:  Objection.  It's vague.  It's

24   ambiguous.  It lacks foundation, calls for speculation,

25   and it's an incomplete hypothetical.  But you can answer

**PATRICIA SANDOVAL**

1    if you know.

2              THE WITNESS:  Yes.  The bank did have two

3    verification steps that were followed.

4              MR. ABRAMS:  Q.  I see.  And what were those

5    verification steps?

6         A.   The verification by the Secretary of State to

7    determine whether or not the entity applicant was active,

8    and then the second step was a certification of beneficial

9    ownership.

10        Q.   Okay.  And can you tell me what that was?

11        A.   Well, which?  Which one?  What -- what what was?

12        Q.   Let's move on to the next question.

13             Let me ask you this, ma'am:  If during the

14   application process the bank received information showing

15   that one or more of these certifications on the form were

16   wrong, would the bank -- would that affect the bank's

17   decision whether or not to issue the loan?

18             MR. TARCZY:  Objection.  Lacks foundation, calls

19   for speculation, incomplete hypothetical.  But you can

20   answer.

21             THE WITNESS:  No, the bank would not proceed.

22             MR. ABRAMS:  Q.  Okay.  So actually what you mean

23   is yes, the bank would not proceed; correct?

24        A.   Correct.  The bank would not proceed.

25        Q.   Okay.  All right.  Let's go on to U3.

**PATRICIA SANDOVAL**

1          (Exhibit U3, marked for identification prior to

2      start of deposition, was introduced at this time.)

3              MR. ABRAMS:  Q.  All right.  I'm showing you

4    what's been marked as U3.  Are you able to identify this

5    document?

6          A.    Yes, I am.

7          Q.    All right.  What's the -- what's U3?

8          A.    This is a letter that would be sent to the

9    borrower indicating that loan payment was received for

10   forgiveness.

11         Q.    Okay.  And, well, who was the borrower for -- for

12   this U3?

13         A.    The borrower for U3 is XLD Group LLC.

14         Q.    Okay.  And is this a document that was kept by

15   Umpqua Bank in the ordinary course of business?

16         A.    Yes, it is.

17         Q.    Okay.  And based on your review of this document,

18   are you able to tell me that -- in terms of this loan how

19   much money in terms of principal and interest the U.S.

20   Small Business Administration paid in connection with the

21   for- -- you know, the forgiveness of the loan?

22         A.    This document reflects $2,012,547.95.

23         Q.    So is your answer "yes"?

24         A.    Yes.

25         Q.    Okay, because you sort of skipped ahead.

**PATRICIA SANDOVAL**

1          Okay.  So the next question was going to be how

2    much is that amount, and can you -- can you just tell me

3    for the record how much the amount is?

4          A.    2,012,547.95.

5          Q.    Okay.  All right.  Let's turn to U4.

6          (Exhibit U4, marked for identification prior to

7          start of deposition, was introduced at this time.)

8          MR. ABRAMS:  Q.  Are you able to identify U4?

9          A.    Yes.

10         Q.    All right.  And what's U4?

11         A.    A letter notifying the borrower of loan

12   forgiveness by the SBA.

13         Q.    Okay.  And is this a document from Umpqua Bank's

14   files?

15         A.    Yes, it is.

16         Q.    All right.  And was this kept in the ordinary

17   course of business?

18         A.    Yes.

19         Q.    Okay.  And based on your review of the document,

20   are you able to tell me how much money the Small Business

21   Administration paid in respect of the second draw PPP loan

22   of XLD Century LLC?  And that's a "yes" or "no" question.

23         A.    Yes.

24         Q.    Okay.  What's that amount based on the bank's

25   records?

**PATRICIA SANDOVAL**

1      A.    $2,013,808.22.

2      Q.    Okay.  All right.  I'm turning to U5 now.

3           (Exhibit U5, marked for identification prior to

4      start of deposition, was introduced at this time.)

5           MR. ABRAMS:  Q.  Are you able to recognize -- are

6  you able to identify U5?

7      A.    Yes.

8      Q.    All right.  And what's U5?

9      A.    This is an e-mail.

10     Q.    Okay.  Between who and whom?

11     A.    Between Amanda Jay and Becky Zhang.

12     Q.    Okay.  And is this a document from Umpqua Bank's

13  files?

14     A.    Yes.

15     Q.    Okay.  And was it kept in the ordinary course of

16  business?

17     A.    Yes.

18     Q.    All right.  Now, let me ask you this:  Did the

19  bank in -- in respect -- we've been talking about two

20  loans; agreed?

21     A.    Yes.

22     Q.    All right.  And did the bank collect processing

23  fees in respect of those loans?

24     A.    I do not know.

25     Q.    Okay.  Did you do any research to find out if the

**PATRICIA SANDOVAL**

1  bank collected processing fees in respect of those loans?

2      A.   I did not.

3      Q.   Why not?

4          MR. TARCZY:  Objection to the extent it invades

5  the attorney-client privilege.  I'm going to instruct the

6  witness not to answer.

7          MR. ABRAMS:  Q.  All right.  Well, let's go back

8  to Exhibit 8.  So we're -- we're looking back at

9  Exhibit 8.  You see in Paragraph 2 it says, "The financial

10 process of second-draw PPP loans, including how monies are

11 paid out by the lender and the United States and when; the

12 nature and amount of processing fees involved..."?  You

13 see that?

14     A.   Yes.

15     Q.   Okay.  And your testimony is that without

16 revealing conversations between you and your counsel,

17 you're not able to tell me why you didn't research this

18 issue?

19     A.   That is correct.

20     Q.   Well, is it fair to say that based on your

21 knowledge -- based on your position, is it -- is it fair

22 to say that that information is somewhere in the bank's

23 files?

24         MR. TARCZY:  Objection to the extent it calls for

25 speculation and lacks foundation.  You can answer if you

PATRICIA SANDOVAL

1    know.

2            THE WITNESS:  Yes.  That would be in the bank's

3    records.

4            MR. ABRAMS:  Okay.

5                    (Pause for Mr. Abrams.)

6            MR. ABRAMS:  Okay.  Let's move on.

7                    (Pause for Mr. Abrams.)

8            MR. ABRAMS:  All right.  I need a short break to

9    check over my notes.  Well, I was about to say I'm almost

10   done, but I'm actually not done.  I'm going to have to --

11   I'm not going to be able to close this deposition out

12   today, but I need a break to see if I can -- if I have

13   any more questions that I can think of right now, so if we

14   could -- let's see.  It's 6:48.  If we could come back on

15   at 7:00 p.m.

16           MS. MOON:  I --

17           MR. TARCZY:  Sure.  Somebody was speaking.  Go

18   ahead.  I didn't mean to cut you off.

19           MS. MOON:  No, you go ahead.  Yeah.

20           MR. TARCZY:  I was just going to say we can come

21   back at 7:00.

22           MS. MOON:  Yeah, and I will have some questions

23   for the deponent basically too.

24           MR. ABRAMS:  Okay.  And by the way, you know, I

25   did say -- when I said 7:00 I really meant 4:00.  I -- I

### PATRICIA SANDOVAL

1  just was looking at the phone -- I mean -- excuse me -- at

2  the time on my screen.  So in other words, in 12 minutes

3  we'll come back.  Okay?

4        MS. MOON:  Okay.

5        MR. TARCZY:  I figured as much.  Yes.

6    (Recess taken from 3:48 to 4:01 p.m. Pacific Time.)

7        MR. ABRAMS:  Q.  Okay.  So ma'am, we -- let me

8  ask you this just so we're clear:  Do you remember you

9  gave some testimony about whether the initial

10  certifications in the application forms -- whether that

11  was a required part of the process?  Do you remember you

12  testified a little bit about that?

13      A.  Yes, I do.

14      Q.  Okay.  And that -- does that testimony apply to

15  both of the application forms?

16      A.  Yes.

17      Q.  Okay.  Now, I understand that you've had an

18  opportunity to do further research while we were off the

19  record just now; is that right?

20        MR. TARCZY:  And you -- I'm going to object to

21  the extent it invades the attorney-client privilege, but

22  you can answer as to what you looked at.

23        MR. ABRAMS:  Well, it's a "yes" or "no" question,

24  so if you're not going to let her give a "yes" or "no"

25  answer to that, then, you know, so be it, but the question

**PATRICIA SANDOVAL**

1    is "yes" or "no."

2            MR. TARCZY:  You can answer the question.

3            THE WITNESS:  Yes.

4            MR. ABRAMS:  Q.  Okay.  And based on your

5    additional research, are you able to give testimony as to

6    the amount of processing fees received by the bank in

7    respect of the two loans we've been discussing today?

8        A.   Yes, I am.

9        Q.   Okay.  And how much in terms of processing fees

10   were received by the bank in terms of each loan, in

11   respect of each loan?

12       A.   According to the SBA procedural notice, it was

13   three percent.

14       Q.   All right.  Well, are you able to testify based

15   on your review of an investigation of bank records, ma'am,

16   or are you simply going by an SBA procedural notice?

17           MR. TARCZY:  Objection to the extent it's vague

18   and ambiguous as to "bank records," but you can answer if

19   you understand.

20           THE WITNESS:  The bank adhered to the SBA

21   procedural notices.

22           MR. ABRAMS:  Q.  Well, I'm just asking you to

23   tell me -- look, you've worked for this bank for 20 years;

24   you've been an SBA position for ten years; you're familiar

25   with the procedures, and I want you to tell me based on

**PATRICIA SANDOVAL**

1   your general knowledge how much in processing fees the

2   bank received in respect of each loan.  Are you able to do

3   that?

4           MR. TARCZY:  Objection to the extent it's asked

5   and answered, but you can answer if you understand,

6   Ms. Sandoval.

7           THE WITNESS:  Yes, based upon my knowledge.

8           MR. ABRAMS:  Q.  All right.  And how much, based

9   on your knowledge in terms of processing fees, was

10  received in respect of each loan?

11      A.   It was three percent of the loan amount.

12      Q.   Okay.  And how much was the loan amounts?

13      A.   Two million.

14      Q.   Okay.  Are you facile with mathematics, ma'am, or

15  shall I just skip -- skip the math?  It's up to you.  Are

16  you good with figures?

17          MR. TARCZY:  Objection.  It's vague.  It's

18  ambiguous.  The answer speaks for itself.  But if you

19  can answer the question, you can answer the question,

20  Ms. Sandoval.

21          MR. ABRAMS:  Q.  All right.  Well, look, how much

22  is three percent of two million dollars?

23          MS. MOON:  Really, Counsel?  She's not here as a

24  calculator.  That's an inappropriate deposition question.

25          MR. ABRAMS:  Q.  All right.  How much is three

**PATRICIA SANDOVAL**

1  percent of two million dollars, ma'am?

2      A.    The fee was -- three percent would have been

3  $60,000.

4          MR. ABRAMS:  Okay.  All right.  So I -- I don't

5  have any more questions at this time.  I can't close out

6  the deposition.  It seems that there's some loose ends, so

7  to speak.  However, I would invite the other attorneys to

8  question the witness as well to get as far as we possibly

9  can today.

10          MR. TARCZY:  Well, Counsel, I just want to put on

11  the record that we are not intending to produce the

12  witness a second time for deposition, so if there are any

13  further questions you need answers to, I would advise that

14  you ask them now.

15          MR. ABRAMS:  All right.  I take it nobody has any

16  cross-examination questions for this witness?

17          MS. MOON:  I do.

18          MR. ABRAMS:  Up to you.

19          MS. MOON:  I have a couple of questions.

20

21                  EXAMINATION BY MS. MOON

22          MS. MOON:  Q.  Okay.  Do you know the date the

23  applicant submitted the U1 exhibit application?

24      A.    I do not.  Not off the top of my head.

25      Q.    Okay.  And you don't know the date the applicant

PATRICIA SANDOVAL

1   submitted the U2 application; correct?

2       A.    I do not have that date memorized, no.

3       Q.    Okay.  And do you know whether the applicant for

4   second draw PPP completed the application by submitting

5   answers to questions as they come up, or in the complete

6   format as shown on U1 and U2 by completing blank areas?

7            MR. TARCZY:  Object to the extent it calls for

8   speculation and is an incomplete hypothetical.  But you

9   can answer.

10           THE WITNESS:  The applicant would complete blank

11  areas of information as far as text boxes.

12           MS. MOON:  Q.  So what I'm saying is when they

13  were completing the blank areas, did the applicant see the

14  complete application as it is presented on U1 and U2, that

15  format, and then -- in other words, are the applicants

16  supplying answers to questions as the questions come up?

17  I mean, do you know how they completed the application

18  online?

19      A.    I do not recall.

20           MS. MOON:  Okay.  That's -- that's all.

21           MR. ABRAMS:  Well, that doesn't raise anything

22  for me.  As mentioned before, I'm reserving my rights on

23  this.  I'm not closing this deposition.  Anyone have

24  any more questions?

25           MS. MOON:  No.

**PATRICIA SANDOVAL**

1          MR. ABRAMS:  All right.  I'm -- I'm going to

2     disconnect then.  Madame Court Reporter, thank you.

3          THE REPORTER:  Before we go off the record, can I

4     get copy orders on the record?

5          MR. ABRAMS:  You know, I'm going to take that up

6     with the service.  That okay with you?

7          THE REPORTER:  Yes.

8          MR. ABRAMS:  I mean -- oh, I see.  So the

9     question is whether the -- the other attorneys want it.

10          MS. MOON:  Oh.  I will order one for the

11     defendants.

12          THE REPORTER:  Okay.  Ms. Moon, do you take

13     electronic, paper, or both?

14          MS. MOON:  Electronic's fine.

15          MR. TARCZY:  And Madame Court Reporter, would I

16     just be able to get your contact information?  I don't

17     want to order one know, but I want to discuss with -- with

18     client representatives as to whether they want one.

19          THE REPORTER:  Yes.  And let me put it in the

20     chat.  Okay.  We are off the record at 4:08.

21        (Deposition was adjourned at 4:08 p.m. Pacific Time.)

22                         ---o0o---

23

24

25

**PATRICIA SANDOVAL**

1                              PENALTY OF PERJURY

2

3              I, the undersigned, hereby certify that I have

4    read the foregoing deposition, that I know the contents

5    thereof, and I declare under penalty of perjury under the

6    laws of the State of California that the foregoing is true

7    and correct, and that there are;

8

9    (Check one)                  _____    NO CORRECTIONS

10                                _____    CORRECTIONS AS ATTACHED

11

12           Executed this _____ day of _____,

13   20_____.

14

15

16

17                   _____

18                   PATRICIA SANDOVAL

19

20                        ---o0o---

21

22

23

24

25

1                          CERTIFICATE OF REPORTER

2

3          I, STACY A. SHORT, a Certified Shorthand Reporter,
    licensed by the State of California, License No. 7446,
    being empowered to administer oaths and affirmations
4   remotely pursuant to Sections 2093(b)(1) and 2025.310(a)
    of the California Code of Civil Procedure, do hereby
5   certify:

6          That the witness in the foregoing deposition,
    PATRICIA SANDOVAL, was present remotely at the time and
7   date specified and was by me sworn to testify to the
    truth, the whole truth, and nothing but the truth;

8
           That said proceeding was taken before me in shorthand
9   writing and thereafter transcribed under my direction by
    computer-aided transcription;

10
           That the foregoing transcript constitutes a full,
11  true, and accurate record of the proceedings which took
    place;

12
           That I am not of counsel or attorney for any of the
13  parties hereto, nor in any way interested in the event of
    this cause, and that I am not related to any of the
14  parties hereto;

15         IN WITNESS WHEREOF, I have hereunto subscribed my
    signature this 24th day of MARCH, 2024.

16

17

18                                    _Stacy a. Short_

19                                    _____

                                      STACY A. SHORT, CSR
20

21

22

23

24

25

1        DEPONENT'S CHANGES AND/OR CORRECTIONS

2   INSTRUCTIONS:  Upon reading the transcript, please note
    any changes or corrections on this sheet.  DO NOT make
3   any marks or notations on the actual transcript.  Use
    additional pages if needed.  If there are no changes,
4   write "No Changes."  SIGN AND DATE THIS FORM BELOW.

5   DEPOSITION OF:       PATRICIA SANDOVAL
    CASE NAME:           UNITED STATES EX REL. GNGH2 INC. VS.
6                        XLD CENTURY LLC, ET AL.
    DEPOSITION DATE:     TUESDAY, MARCH 19, 2024

7

8   PAGE LINE            CHANGE/CORRECTION

9   _____ _____ _____

10  _____ _____ _____

11  _____ _____ _____

12  _____ _____ _____

13  _____ _____ _____

14  _____ _____ _____

15  _____ _____ _____

16  _____ _____ _____

17  _____ _____ _____

18  _____ _____ _____

19  _____ _____ _____

20  _____ _____ _____

21  _____ _____ _____

22

23       I, PATRICIA SANDOVAL, have read my deposition of
    March 19, 2024, and hereby affix my signature that same is
24  true and correct, except as noted above.

25       _____        _____
         SIGNATURE                               DATE

Case 2:22-cv-05514-SB-PVC    Document 107-1    Filed 07/05/24    Page 49 of 54    Page
ID #:871

U.S. ex rel. GNGH2, Inc. vs.
XLD CENTURY LLC and XLD GROUP LLC

PATRICIA SANDOVAL
March 19, 2024

**$**

**$2,012,547.95 (1)**
34:22
**$2,013,808.22 (1)**
36:1
**$60,000 (1)**
42:3

**/**

**/// (1)**
29:25

**[**

**[sic] (1)**
25:12

**A**

**ability (3)**
8:20,24;13:1
**able (29)**
10:13;12:3,12;
13:19;15:8;20:1,2,9;
22:14,16;23:1,23;
24:1,17,17;27:12,18;
34:4,18;35:8,20;36:5,
6;37:17;38:11;40:5,
14;41:2;44:16
**above (1)**
19:14
**ABRAMS (64)**
6:21,22,23;10:10,
17;11:5,7;13:7;14:12;
15:3,20;16:15,19,21;
17:5,12,20,24;18:1,4,
12;20:1,18;21:3,24;
22:14,22;23:9;24:15;
26:22;27:18;28:15;
29:5;30:3;31:12,14,
18;32:18;33:4,22;
34:3;35:8;36:5;37:7;
38:4,5,6,7,8,24;39:7,
23;40:4,22;41:8,21,
25;42:4,15,18;43:21;
44:1,5,8
**accept (3)**
10:15,25;26:13
**According (4)**
25:2,4;30:15;40:12
**accurate (1)**
24:21
**active (1)**
33:7
**actually (8)**
18:1,24;23:5;25:4,
9;29:23;33:22;38:10
**additional (1)**
40:5
**address (4)**

**10:12,13;11:1;**
**29:12**
**adhered (1)**
40:20
**adjourned (1)**
44:21
**administration (3)**
13:4;34:20;35:21
**administrator (2)**
9:6,9
**admissible (1)**
22:10
**advance (1)**
23:11
**advise (1)**
42:13
**affect (2)**
8:23;33:16
**afternoon (1)**
6:22
**again (5)**
9:7;10:6;12:15;
17:3;28:14
**ago (3)**
21:10;22:1;31:5
**agree (2)**
19:14,20
**agreed (2)**
19:11;36:20
**ahead (3)**
34:25;38:18,19
**alcohol (1)**
8:23
**allowing (1)**
7:3
**almost (1)**
38:9
**Amanda (1)**
36:11
**ambiguous (14)**
14:10;15:15;16:11;
20:14;21:18;26:18;
28:11;29:1;31:11,16;
32:14,24;40:18;41:18
**amount (6)**
35:2,3,24;37:12;
40:6;41:11
**amounts (1)**
41:12
**and/or (1)**
19:11
**Angeles (3)**
6:25;10:19,23
**answered (2)**
16:20;41:5
**appear (1)**
29:11
**appearing (2)**
6:2,14
**appears (2)**
24:3,7
**applicant (36)**
12:13,19;13:3,6;

**14:20;15:6;16:7;**
**19:13,19;20:3,11;**
**21:16;22:3;23:17,18;**
**25:16,18,19,22;26:24;**
**27:4,6,11,22;28:8,23;**
**29:18;30:16,17,23;**
**33:7;42:23,25;43:3,**
**10,13**
**Applicants (5)**
13:1;15:18,21;16:2;
43:15
**application (41)**
13:25;14:1,2,5,17,
18,19,21;16:8;19:6,9,
20;20:4,12;21:17;
22:3;23:4,16;24:1;
25:6,6,12,17;26:9,11;
29:14,17;30:11,23;
31:15;32:3,19,22;
33:14;39:10,15;
42:23;43:1,4,14,17
**applications (3)**
15:2;26:14,15
**apply (2)**
13:1;39:14
**applying (1)**
25:22
**approval (1)**
13:5
**approximately (1)**
9:12
**area (1)**
29:9
**areas (4)**
19:3;43:6,11,13
**Argumentative (3)**
16:17;19:24;24:12
**assist (1)**
12:6
**assume (1)**
8:18
**ATTACHED (1)**
45:10
**attorney (1)**
6:23
**attorney-client (6)**
16:25;20:25;22:7,
20;37:5;39:21
**attorneys (2)**
42:7;44:9
**authorized (4)**
25:11,16,19;26:24
**average (1)**
29:10

**B**

**back (11)**
13:10,13;20:7;
28:16;31:24;32:6;
37:7,8;38:14,21;39:3
**Bank (48)**
7:2;9:3,4,18,19,19,

**22;10:10,16,18;12:7,**
**9,10,11,14,19;13:2,**
**21;18:17;20:23;**
**23:21;25:10,12,15;**
**26:13;27:12;29:19,**
**21;30:20;32:19,20;**
**33:2,14,16,21,23,24;**
**34:15;36:19,22;37:1;**
**40:6,10,15,18,20,23;**
**41:2**
**Bank's (6)**
24:9,16,18,22,25;
25:2,5;26:3;30:15;
33:16;35:13,24;
36:12;37:22;38:2
**based (11)**
23:25;34:17;35:19,
24;37:20,21;40:4,14,
25;41:7,8
**basically (1)**
38:23
**Becky (1)**
36:11
**behalf (3)**
6:2;7:1;10:16
**below (1)**
26:25
**beneficial (1)**
33:8
**besides (1)**
21:4
**best (2)**
8:19;13:1
**bit (1)**
39:12
**blank (3)**
43:6,10,13
**Bonita (4)**
10:5,7,21;11:2
**B-o-n-i-t-a (1)**
10:9
**borrower (6)**
13:10,12;34:9,11,
13;35:11
**borrowers (1)**
15:1
**both (2)**
39:15;44:13
**boxes (1)**
43:11
**break (2)**
38:8,12
**briefly (1)**
11:13
**brought (1)**
11:1
**business (13)**
11:15,22;12:6;15:1;
23:21;27:22;30:20;
31:23;34:15,20;
35:17,20;36:16

**22;10:10,16,18;12:7,**
**9,10,11,14,19;13:2,**
**21;18:17;20:23;**
**23:21;25:10,12,15;**
**26:13;27:12;29:19,**
**21;30:20;32:19,20;**
**33:2,14,16,21,23,24;**
**34:15;36:19,22;37:1;**
**40:6,10,15,18,20,23;**
**41:2**

**C**

**calculated (1)**
22:10
**calculator (1)**
41:24
**California (6)**
6:3,6;10:5,7,21;
45:6
**called (1)**
25:24
**calling (1)**
14:7
**calls (18)**
12:22;14:23;15:13,
16;16:10,24;19:23,
23;20:13;21:20;
26:18;27:15;28:11;
29:1;32:24;33:18;
37:24;43:7
**can (62)**
6:19;8:11;9:1,7;
10:2,8,14;11:3,8,13,
17,19;12:15,15,18,23;
14:4,8,25;15:14,17;
16:11,25;17:7;20:15,
25;21:21;22:7,7,8;
23:12;24:12;26:3,10,
19;27:3,16;28:12,14;
29:2,9,10;30:7;32:15,
25;33:10,19;35:2,2;
37:25;38:12,13,20;
39:22;40:2,18;41:5,
19,19;42:9;43:9;44:3
**case (2)**
6:24;10:12
**Category (2)**
19:24,25
**Century (2)**
30:17;35:22
**certification (4)**
27:5,7;28:2;33:8
**certifications (8)**
19:10,11;27:12;
28:4,5,17;33:15;
39:10
**Certified (1)**
6:6
**certify (4)**
25:18;26:25;27:11;
45:3
**chat (1)**
44:20
**check (2)**
38:9;45:9
**China (1)**
27:24
**city (1)**
10:2
**Civil (1)**
19:1
**clear (4)**

Case 2:22-cv-05514-SB-PVC    Document 107-1    Filed 07/05/24    Page 50 of 54    Page
ID #:872

U.S. ex rel. GNGH2, Inc. vs.
XLD CENTURY LLC and XLD GROUP LLC

PATRICIA SANDOVAL
March 19, 2024

19:17;22:17;25:4;
39:8
**client (1)**
44:18
**close (2)**
38:11;42:5
**closing (1)**
43:23
**code (1)**
29:9
**collect (1)**
36:22
**collected (1)**
37:1
**commencing (1)**
6:4
**communication (1)**
16:25
**communications (2)**
21:1;22:25
**community (1)**
10:4
**companies (1)**
12:6
**complete (6)**
14:21;15:2,6;43:5,
10,14
**completed (4)**
19:8;29:17;43:4,17
**completing (2)**
43:6,13
**compliance (5)**
9:5,8,10;11:16,22
**compound (3)**
14:11;31:17;32:12
**computer (3)**
15:7,10,19
**concern (1)**
27:22
**concerned (2)**
10:17;24:8
**conclude (1)**
26:10
**conclusion (1)**
19:23
**confer (1)**
10:14
**confused (1)**
24:16
**connection (3)**
30:24;32:19;34:20
**contact (1)**
44:16
**contained (1)**
19:10
**contents (1)**
45:4
**continue (1)**
11:10
**conversations (1)**
37:16
**cooperating (1)**
7:3

**copy (1)**
44:4
**CORRECTIONS (2)**
45:9,10
**Counsel (10)**
10:14;17:2,9;18:10;
21:1;22:11,25;37:16;
41:23;42:10
**Counselor (2)**
10:10;31:13
**couple (1)**
42:19
**course (8)**
7:5;10:19;23:21;
30:20;31:9;34:15;
35:17;36:15
**court (8)**
6:15,25;7:17,21;
8:3,10;44:2,15
**COVID (1)**
12:6
**cross-examination (1)**
42:16
**current (2)**
9:2,3
**Currently (1)**
9:23
**cut (1)**
38:18

---

**D**

**date (3)**
42:22,25;43:2
**David (1)**
6:23
**day (3)**
6:4;20:8;45:12
**decision (1)**
33:17
**declare (1)**
45:5
**defendants (1)**
44:11
**deponent (1)**
38:23
**deposed (1)**
7:7
**DEPOSITION (23)**
6:1,11;7:10;16:23;
17:6,13,13;18:20;
20:20;23:8;24:5,17;
30:2;34:2;35:7;36:4;
38:11;41:24;42:6,12;
43:23;44:21;45:4
**describe (3)**
11:13;12:3,12
**desktop (1)**
15:19
**detail (1)**
11:18
**determine (1)**
33:7

**Diego (1)**
6:3
**different (3)**
14:16;22:23;25:1
**disaster (1)**
12:1
**disburses (1)**
13:5
**disclosing (1)**
22:24
**disconnect (1)**
44:2
**discuss (1)**
44:17
**discussing (1)**
40:7
**discussions (2)**
17:1,8
**document (27)**
18:4,7;21:6,8;22:1;
23:10,13,15,18;24:4;
27:4;29:6,7;30:6,8,17,
19,22;31:19;32:1;
34:5,14,17,22;35:13,
19;36:12
**documents (2)**
11:19;24:9
**DocuSign (7)**
25:25;26:2,4,8,10,
15,20
**dollars (2)**
41:22;42:1
**done (11)**
8:6;15:3,5,9,10,11,
23,25;16:4;38:10,10
**down (6)**
6:19;7:22;8:3,11;
25:3,8
**draw (14)**
12:1;20:10;23:16;
24:2;25:5;26:5,14;
30:11,12,13;31:15;
32:3;35:21;43:4
**drugs (1)**
8:23
**duly (1)**
6:15
**during (2)**
12:6;33:13
**duties (1)**
11:14

---

**E**

**electronic (3)**
25:10,20;44:13
**electronically (7)**
15:4,5,9,23;16:1,5,8
**Electronic's (1)**
44:14
**else (2)**
15:11;28:22
**e-mail (2)**

**Diego (1)**
29:12;36:9
**employer (2)**
9:2,3
**end (1)**
25:9
**ends (1)**
42:6
**entails (1)**
11:18
**enter (3)**
29:9,10,15
**entity (2)**
27:23;33:7
**even (3)**
7:10,16;8:4
**event (4)**
19:13,19;20:3,11
**evidence (2)**
17:16;22:10
**EXAMINATION (2)**
6:21;42:21
**examined (1)**
6:16
**example (1)**
11:18
**except (2)**
17:1;31:9
**excuse (1)**
39:1
**Executed (1)**
45:12
**exhibit (15)**
17:15,18,20,23;
18:2;21:7;23:6,7;
30:1;34:1;35:6;36:3;
37:8,9;42:23
**Exhibits (1)**
6:10
**extent (17)**
12:21;14:23;15:13;
16:24;17:1,8;20:24;
22:6,19;27:14;32:14;
37:4,24;39:21;40:17;
41:4;43:7

---

**F**

**facile (1)**
41:14
**fact (1)**
16:16
**failed (10)**
16:7;19:13,19;20:3,
12;21:16;22:3;23:1;
27:11;28:8
**fair (10)**
24:24,24;30:22;
31:9,9,14,21;32:2;
37:20,21
**faith (1)**
26:25
**familiar (2)**
11:25;40:24

**far (5)**
10:19,23;19:4;42:8;
43:11
**Federal (2)**
6:25;19:1
**fee (1)**
42:2
**fees (7)**
36:23;37:1,12;40:6,
9;41:1,9
**few (1)**
12:4
**field (1)**
29:10
**fields (1)**
29:8
**figured (1)**
39:5
**figures (1)**
41:16
**file (2)**
17:10,11
**files (9)**
21:4;24:10,16,18,
22;26:10;35:14;
36:13;37:23
**financial (1)**
37:9
**find (4)**
10:21;21:15;22:2;
36:25
**Fine (2)**
11:7;44:14
**finish (1)**
31:12
**first (5)**
6:15;7:1,6;29:6;
31:3
**five (1)**
18:17
**flip (1)**
30:6
**flow (1)**
12:17
**followed (1)**
33:3
**following (1)**
19:3
**follows (1)**
6:16
**for- (1)**
34:21
**foregoing (2)**
45:4,6
**foreseeable (1)**
11:11
**forged (1)**
24:9
**forgiven (5)**
13:14,15,18,20,23
**forgiveness (3)**
34:10,21;35:12
**form (19)**

Case 2:22-cv-05514-SB-PVC    Document 107-1    Filed 07/05/24    Page 51 of 54   Page
ID #:873

U.S. ex rel. GNGH2, Inc. vs.
XLD CENTURY LLC and XLD GROUP LLC

PATRICIA SANDOVAL
March 19, 2024

15:4,7,21;16:8;
19:20;20:4,12;21:17;
22:3;23:16;24:1;25:6,
17;29:16,17,20;30:11,
23;33:15

**format (2)**
43:6,15

**forms (14)**
14:2,3,5,17,22;
16:2;19:8,9,10;23:5;
25:13;32:22;39:10,15

**foundation (9)**
20:15;21:21;24:12;
27:15;28:11;29:1;
32:24;33:18;37:25

**four (1)**
11:9

**four-page (1)**
23:10

**fraudulent (1)**
24:8

**front (1)**
18:5

**full-time (1)**
9:15

**functions (2)**
11:16,20

**further (2)**
39:18;42:13

**future (1)**
11:11

**G**

**gave (1)**
39:9

**general (4)**
12:12;14:4;26:4;
41:1

**generally (1)**
15:4

**given (1)**
7:17

**GNGH2 (1)**
6:24

**Good (3)**
6:22;26:25;41:16

**government (1)**
12:5

**great (2)**
11:6;20:6

**Group (6)**
23:19;24:2;25:6;
31:15;32:3;34:13

**guess (1)**
10:23

**H**

**hand (1)**
6:19

**happen (8)**
13:7,21;19:12,19;

20:3,11;21:16;22:2

**happened (1)**
14:5

**happy (1)**
20:6

**head (2)**
7:24;42:24

**hear (1)**
20:6

**held (1)**
9:10

**help (1)**
31:19

**hereby (1)**
45:3

**hold (1)**
30:4

**home (1)**
9:25

**hour (1)**
6:5

**hypothetical (13)**
12:22;14:8,24;
16:11;20:15;21:20;
26:18;27:15;28:12;
29:2;32:25;33:19;
43:8

**I**

**identification (7)**
6:11;17:19;23:7;
30:1;34:1;35:6;36:3

**identify (4)**
23:23;34:4;35:8;
36:6

**inappropriate (1)**
41:24

**Inc (1)**
6:24

**include (1)**
11:19

**including (2)**
19:7;37:10

**incomplete (13)**
12:22;14:7,24;
16:11;20:15;21:19;
26:18;27:15;28:12;
29:2;32:25;33:19;
43:8

**indicating (1)**
34:9

**influence (1)**
8:22

**information (13)**
13:2,3,4;14:20;
29:15,16,19;32:20,21;
33:14;37:22;43:11;
44:16

**initial (3)**
19:13,20;39:9

**initialed (3)**
19:11;27:4,6

**initialing (1)**
26:25

**initiate (1)**
14:19

**inquiry (1)**
19:3

**instruct (2)**
22:20;37:5

**intend (1)**
11:10

**intending (1)**
42:11

**interest (1)**
34:19

**interplay (1)**
12:13

**interrupt (1)**
8:10

**into (6)**
10:11;11:17;17:15;
18:23;29:16,20

**introduced (6)**
17:18;23:8;30:2;
34:2;35:7;36:4

**invades (5)**
20:24;22:6,19;37:4;
39:21

**investigation (1)**
40:15

**invite (1)**
42:7

**involve (1)**
17:8

**involved (5)**
12:8,18,20,20;
37:12

**involves (1)**
17:1

**issue (5)**
19:12;22:18;30:24;
33:17;37:18

**issues (1)**
19:7

**J**

**Jay (1)**
36:11

**job (3)**
7:12,13;11:14

**K**

**keeps (1)**
23:21

**kept (4)**
30:19;34:14;35:16;
36:15

**kind (1)**
25:10

**knowledge (5)**
19:25;37:21;41:1,7,
9

**knowledgeable (1)**
19:2

**L**

**lacks (9)**
20:14;21:20;24:12;
27:15;28:11;29:1;
32:24;33:18;37:25

**laws (1)**
45:6

**lead (1)**
22:10

**legal (2)**
7:18;19:23

**lender (3)**
12:11;13:9;37:11

**lending (1)**
12:14

**letter (2)**
34:8;35:11

**License (1)**
6:7

**life (1)**
10:11

**little (2)**
24:15;39:12

**live (2)**
10:4,7

**lives (1)**
10:20

**LLC (7)**
23:19;24:2;25:6;
30:18;32:4;34:13;
35:22

**loan (39)**
11:16,19,20;12:13;
13:2,5,9,11,13,20;
14:18,20;17:11;
19:12;21:4;23:5;
25:22;26:9,11,13,14;
27:13;28:3,24;30:16,
24;32:3;33:17;34:9,
18,21;35:11,21;40:10,
11;41:2,10,11,12

**loans (17)**
11:22,23;12:11;
13:14,15,17,23,25;
19:7;20:11;26:5;
30:13;36:20,23;37:1,
10;40:7

**located (1)**
10:18

**long (4)**
9:10,14,17;11:7

**look (3)**
23:5;40:23;41:21

**looked (2)**
31:3;39:22

**looking (5)**
18:19;27:3;29:6;
37:8;39:1

**looks (3)**

10:22;23:18;27:6

**loose (1)**
42:6

**Los (3)**
6:25;10:19,23

**M**

**ma'am (17)**
9:7,11;11:8;14:12;
16:15;18:12;19:15;
20:1;22:14,23;30:8;
31:19;33:13;39:7;
40:15;41:14;42:1

**Madame (2)**
44:2,15

**maintained (1)**
13:9

**maintaining (1)**
11:20

**majority (1)**
13:16

**map (1)**
10:21

**March (1)**
6:4

**mark (1)**
17:15

**marked (11)**
6:10;17:18;23:7,10;
30:1,4,5;34:1,4;35:6;
36:3

**math (1)**
41:15

**mathematics (1)**
41:14

**mean (8)**
28:7,20;31:17;
33:22;38:18;39:1;
43:17;44:8

**means (1)**
9:24

**meant (1)**
38:25

**medication (1)**
8:23

**meet (2)**
10:14;28:8

**memorized (1)**
43:2

**mentioned (2)**
11:21;43:22

**middle (1)**
8:4

**might (2)**
24:8,9

**million (3)**
41:13,22;42:1

**minority (1)**
13:17

**minute (1)**
31:5

**minutes (1)**

Case 2:22-cv-05514-SB-PVC   Document 107-1   Filed 07/05/24   Page 52 of 54   Page
ID #:874

U.S. ex rel. GNGH2, Inc. vs.                                          PATRICIA SANDOVAL
XLD CENTURY LLC and XLD GROUP LLC                                         March 19, 2024

39:2

**Misstates (2)**
19:22;24:11

**money (8)**
12:18;13:21;16:9;
27:13;28:9,24;34:19;
35:20

**monies (2)**
37:10

**monthly (1)**
29:10

**MOON (26)**
14:10;15:12,14,15;
16:17;18:10;21:18;
22:9;31:11,16;32:12;
38:16,19,22;39:4;
41:23;42:17,19,21,22;
43:12,20,25;44:10,12,
14

**more (5)**
18:11;33:15;38:13;
42:5;43:24

**most (1)**
19:25

**move (4)**
29:23,23;33:12;
38:6

**much (12)**
11:18;34:19;35:2,3,
20;39:5;40:9;41:1,8,
12,21,25

**must (2)**
26:11,24

## N

**NAICS (1)**
29:9

**name (2)**
6:23;9:1

**nature (1)**
37:12

**necessary (3)**
28:21,24;31:20

**need (8)**
10:12,25;19:8,9,11;
38:8,12;42:13

**needs (1)**
10:12

**next (5)**
27:1,4,6;33:12;35:1

**nobody (1)**
42:15

**northwest (1)**
10:18

**NOTE (1)**
6:10

**notes (1)**
38:9

**notice (3)**
17:13;40:12,16

**notices (1)**
40:21

**notifying (1)**
35:11

**Number (1)**
29:24

## O

**o0o- (3)**
6:8;44:22;45:20

**oath (1)**
7:17

**object (4)**
12:21;32:13;39:20;
43:7

**Objection (33)**
14:10,23;15:12,13,
15,16;16:10,17,18,24;
19:22;20:13,24;
21:18,19;22:6,9,19;
24:11;26:17;27:14;
28:10,25;31:11,16;
32:12,23;33:18;37:4,
24;40:17;41:4,17

**objections (2)**
14:6;17:7

**obligation (1)**
7:18

**obtain (1)**
14:20

**off (5)**
38:18;39:18;42:24;
44:3,20

**offered (1)**
12:5

**office (1)**
9:22

**one (8)**
27:1;31:3;33:11,15;
44:10,17,18;45:9

**online (1)**
43:18

**onto (1)**
30:4

**opportunity (1)**
39:18

**order (5)**
17:16;19:12;28:2;
44:10,17

**orders (1)**
44:4

**ordinary (5)**
23:21;30:19;34:15;
35:16;36:15

**out (8)**
9:21;17:16;21:15;
22:2;36:25;37:11;
38:11;42:5

**outside (1)**
20:25

**over (2)**
7:9;38:9

**ownership (1)**
33:9

## P

**Pacific (3)**
6:5;39:6;44:21

**Page (5)**
18:19;25:8;26:22;
27:20;29:6

**pages (1)**
18:17

**paid (4)**
13:23;34:20;35:21;
37:11

**pandemic (1)**
12:6

**paper (2)**
15:4;44:13

**Paragraph (4)**
18:22;21:11,14;
37:9

**part (4)**
27:8;28:18,21;
39:11

**participate (1)**
12:10

**participated (1)**
12:9

**particular (2)**
9:22;23:17

**party (1)**
7:2

**PATRICIA (3)**
6:1,13;45:18

**Pause (2)**
38:5,7

**pay (3)**
13:10,13,21

**payment (1)**
34:9

**payroll (1)**
29:11

**PENALTY (2)**
45:1,5

**pending (1)**
6:25

**People's (1)**
27:23

**percent (5)**
40:13;41:11,22;
42:1,2

**percentage (1)**
13:18

**PERJURY (2)**
45:1,5

**person (1)**
19:25

**personal (1)**
10:11

**phone (2)**
15:18;39:1

**place (1)**
25:21

**Plaintiff (2)**

6:2,24

**Plaintiff-Relator (1)**
19:1

**please (4)**
12:16;17:4;21:23;
31:12

**pm (4)**
6:5;38:15;39:6;
44:21

**portion (1)**
18:11

**pose (1)**
12:15

**posed (1)**
22:13

**position (6)**
9:4,11,12,15;37:21;
40:24

**possibly (2)**
31:17;42:8

**potentially (1)**
14:7

**PPP (22)**
11:22;12:1,11,13;
13:1,15,24,25;15:5;
19:7;20:10;24:2;25:6;
26:5,14;30:13,24;
31:15;32:3;35:21;
37:10;43:4

**practice (2)**
26:4,13

**prepare (4)**
16:22;17:5;20:19,
21

**prepared (2)**
7:11;19:18

**presented (1)**
43:14

**principal (1)**
34:19

**prior (6)**
6:11;23:7;30:1;
34:1;35:6;36:3

**privilege (5)**
20:25;22:7,20;37:5;
39:21

**privileged (1)**
16:25

**procedural (3)**
40:12,16,21

**Procedure (1)**
19:1

**procedures (1)**
40:25

**proceed (3)**
33:21,23,24

**proceeds (1)**
13:5

**process (14)**
7:3;13:25;14:1,18,
20;19:7;27:9,13;
28:18;29:14;32:19;
33:14;37:10;39:11

**processed (1)**
28:3

**processing (7)**
36:22;37:1,12;40:6,
9;41:1,9

**produce (1)**
42:11

**program (7)**
12:1,4,5,8,9;15:5;
26:20

**pry (1)**
10:11

**pursuant (2)**
6:7;18:25

**put (8)**
6:19;14:15;17:21;
22:22;24:25;29:19;
42:10;44:19

## R

**raise (1)**
43:21

**read (6)**
18:23,23,24;21:14;
23:18;45:4

**reading (1)**
21:12

**realize (1)**
7:1

**really (6)**
20:6;22:9,12;25:21;
38:25;41:23

**recall (3)**
17:14;32:6;43:19

**received (6)**
33:14;34:9;40:6,10;
41:2,10

**receives (2)**
13:2,4

**Recess (1)**
39:6

**recipient (1)**
19:8

**recognize (4)**
23:13;30:6,7;36:5

**record (11)**
7:9;10:25;18:23;
23:20,25;35:3;39:19;
42:11;44:3,4,20

**records (9)**
24:18,25;25:2,5;
30:15;35:25;38:3;
40:15,18

**reflects (1)**
34:22

**related (1)**
11:16

**relevant (1)**
22:12

**relief (2)**
12:1;24:2

**remember (4)**

Case 2:22-cv-05514-SB-PVC    Document 107-1    Filed 07/05/24    Page 53 of 54    Page
ID #:875

U.S. ex rel. GNGH2, Inc. vs.                                      PATRICIA SANDOVAL
XLD CENTURY LLC and XLD GROUP LLC                                March 19, 2024

31:5;32:8;39:8,11
**remotely (6)**
    6:2,15;9:23,25;
    11:8,9
**rephrase (2)**
    8:15;21:25
**Reporter (15)**
    6:6,15,19;7:21;8:3,
    11;17:23,25;18:3;
    44:2,3,7,12,15,19
**represent (3)**
    10:24;18:16;25:19
**representation (4)**
    24:22;30:22;31:14;
    32:2
**representative (3)**
    25:11,16;26:24
**representatives (1)**
    44:18
**representing (1)**
    6:24
**Republic (1)**
    27:24
**requests (1)**
    19:2
**require (1)**
    28:20
**required (6)**
    27:8;28:2,4,7,18;
    39:11
**requirements (1)**
    28:8
**research (10)**
    20:19,21;21:15;
    22:2,18;23:1;36:25;
    37:17;39:18;40:5
**reserving (1)**
    43:22
**reside (1)**
    10:3
**respect (8)**
    35:21;36:19,23;
    37:1;40:7,11;41:2,10
**responsible (1)**
    11:15
**revealing (1)**
    37:16
**review (7)**
    17:12;21:4;23:25;
    32:20;34:17;35:19;
    40:15
**reviewed (3)**
    17:10;24:4,16
**reviewing (1)**
    11:19
**reviews (1)**
    13:3
**right (40)**
    8:13,22;11:13,25;
    12:3;16:4;18:4,12;
    19:6;22:18,22;23:9,
    15;24:21;29:5,8;
    30:10;31:4,22;33:25;

34:3,7;35:5,10,16;
36:2,8,18,22;37:7;
38:8,13;39:19;40:14;
41:8,21,25;42:4,15;
44:1
**rights (1)**
    43:22
**role (2)**
    14:17,19
**roughly (1)**
    13:17
**Rule (1)**
    18:25
**rules (2)**
    7:10;19:1

**S**

**same (9)**
    8:2;14:6;17:7;31:1,
    2,8;32:10,11,16
**San (1)**
    6:3
**SANDOVAL (9)**
    6:1,13,22;12:24;
    21:21;32:15;41:6,20;
    45:18
**saw (2)**
    21:10;22:1
**say- (1)**
    16:19
**saying (4)**
    7:24;16:21;24:8;
    43:12
**SBA (12)**
    9:10;11:21;12:14,
    20;13:4,5,23;35:12;
    40:12,16,20,24
**screen (6)**
    15:7,11;17:21;
    18:13;30:4;39:2
**scroll (4)**
    18:15;23:11;25:3,8
**second (20)**
    12:1;17:22;20:10;
    23:16;24:2;25:5;26:5,
    14;27:19;28:16;
    30:11,12,13;31:15,25;
    32:3;33:8;35:21;
    42:12;43:4
**second-draw (2)**
    19:7;37:10
**Secretary (1)**
    33:6
**seems (1)**
    42:6
**sent (1)**
    34:8
**series (4)**
    26:23;29:8;32:7,10
**served (1)**
    18:16
**service (1)**

44:6
**shaking (1)**
    7:24
**shall (1)**
    41:15
**sharing (1)**
    29:22
**SHORT (2)**
    6:5;38:8
**Shorthand (1)**
    6:6
**show (3)**
    24:25;31:18,24
**showed (1)**
    31:5
**showing (6)**
    18:11;23:9;30:3,5;
    33:14;34:3
**shown (1)**
    43:6
**sign (8)**
    15:21;16:8;19:13,
    19;20:3,12;21:16;
    22:3
**signed (1)**
    19:9
**signing (2)**
    25:12,16
**similarly (1)**
    8:9
**simply (1)**
    40:16
**sit (1)**
    19:17
**skip (2)**
    41:15,15
**skipped (1)**
    34:25
**small (5)**
    11:22;12:6;15:1;
    34:20;35:20
**Somebody (1)**
    38:17
**someone (2)**
    29:9,10
**somewhere (1)**
    37:22
**sorry (4)**
    10:6;14:14;18:10;
    21:22
**sort (2)**
    8:5;34:25
**speak (2)**
    20:22;42:7
**speaking (2)**
    15:4;38:17
**speaks (1)**
    41:18
**speculation (16)**
    12:22;14:7,24;
    15:16;16:10;19:23;
    20:14;21:20;26:19;
    27:16;28:11;29:1;

32:24;33:19;37:25;
43:8
**spell (1)**
    10:8
**STACY (1)**
    6:5
**start (6)**
    6:11;23:8;30:2;
    34:2;35:7;36:4
**starting (1)**
    12:19
**State (4)**
    6:6;10:2;33:6;45:6
**States (1)**
    37:11
**step (2)**
    28:15;33:8
**steps (2)**
    33:3,5
**stipulate (1)**
    11:3
**stop (1)**
    29:22
**stuff (1)**
    27:23
**Subject (2)**
    18:20;26:15
**submit (8)**
    16:2;8;19:13,20;
    20:4,12;21:16;22:3
**submits (1)**
    13:3
**submitted (5)**
    30:23;31:15;32:3;
    42:23;43:1
**submitting (3)**
    25:12,17;43:4
**Subpoena (5)**
    6:7;10:15,25;11:1;
    18:16
**subpoenaed (1)**
    10:13
**supplied (3)**
    19:2;32:21,21
**supplying (1)**
    43:16
**supporting (1)**
    11:15
**sure (8)**
    7:10;10:23;21:24;
    25:11,21;26:12;31:1;
    38:17
**sworn (1)**
    6:15
**system (7)**
    25:11,20,24;26:4,8,
    16,21
**systems (1)**
    11:20

**T**

**talk (1)**

8:2
**talked (2)**
    31:25,25
**talking (3)**
    20:10;30:13;36:19
**TARCZY (39)**
    10:14;11:3;12:21;
    14:6,23;15:13,16;
    16:10,18,20,24;17:7;
    19:22;20:13,24;
    21:19;22:6,19;24:11;
    26:17;27:14;28:10,
    25;32:13,23;33:18;
    37:4,24;38:17,20;
    39:5,20;40:2,17;41:4,
    17;42:10;43:7;44:15
**ten (2)**
    9:12;40:24
**terms (12)**
    12:13,17;13:21,24;
    14:4,5;29:14;34:18,
    19;40:9,10;41:9
**testified (4)**
    6:16;10:20;28:17;
    39:12
**testify (5)**
    8:24;19:18,24;20:2;
    40:14
**testimony (9)**
    19:22;22:24;23:2;
    24:11;28:1;37:15;
    39:9,14;40:5
**thereof (1)**
    45:5
**third (1)**
    7:2
**though (2)**
    7:10,16
**three (5)**
    40:13;41:11,22,25;
    42:2
**today (6)**
    7:18;8:24;19:18;
    38:12;40:7;42:9
**today's (3)**
    16:23;17:6;20:20
**top (3)**
    18:24;27:20;42:24
**true (2)**
    23:4;45:6
**truly (1)**
    24:18
**truth (1)**
    7:18
**truthfully (1)**
    8:24
**try (3)**
    8:10,14;21:24
**trying (3)**
    10:20;22:11,12
**Tuesday (1)**
    6:4
**turn (2)**

Case 2:22-cv-05514-SB-PVC    Document 107-1    Filed 07/05/24    Page 54 of 54    Page
ID #:876

U.S. ex rel. GNGH2, Inc. vs.
XLD CENTURY LLC and XLD GROUP LLC

PATRICIA SANDOVAL
March 19, 2024

27:19;35:5
**turning (2)**
  32:6;36:2
**two (6)**
  33:2;36:19;40:7;
  41:13,22;42:1
**typically (2)**
  13:10,12

## U

**U1 (15)**
  6:10;23:6,7,10;
  29:7;31:2,6,9,10,14,
  24;32:7;42:23;43:6,
  14
**U2 (7)**
  30:1,5;32:6,11;
  43:1,6,14
**U3 (6)**
  33:25;34:1,4,7,12,
  13
**U4 (4)**
  35:5,6,8,10
**U5 (4)**
  36:2,3,6,8
**U7 (1)**
  6:10
**U8 (4)**
  17:18;18:2,20;21:7
**Um- (1)**
  12:7
**Umpqua (20)**
  7:2;9:3,4,17,19,19,
  22;12:7,9,10,11,14;
  18:17;23:21;24:9;
  30:20;32:20;34:15;
  35:13;36:12
**under (3)**
  8:22;45:5,5
**undersigned (1)**
  45:3
**understood (1)**
  8:18
**unfortunate (1)**
  20:19
**unfortunately (1)**
  17:17
**unincorporated (1)**
  10:4
**unit (1)**
  11:16
**United (1)**
  37:11
**up (6)**
  17:21;41:15;42:18;
  43:5,16;44:5
**upon (1)**
  41:7
**use (1)**
  26:4
**used (5)**
  15:18;25:10;26:8,

11,21
**using (1)**
  15:10

## V

**Vague (14)**
  14:10;15:15;16:11;
  20:14;21:18;26:17;
  28:10,25;31:11,16;
  32:14,23;40:17;41:17
**variety (1)**
  11:20
**verbal (1)**
  7:22
**verification (3)**
  33:3,5,6
**verify (2)**
  25:15;32:21
**via (2)**
  6:2,14
**Vice-president (1)**
  9:7
**vice-president/SBA (2)**
  9:5,8
**VIDEOCONFERENCE (3)**
  6:1,3,14

## W

**wait (1)**
  8:6
**way (7)**
  8:10,17;14:16;
  15:24;22:23;25:1;
  38:24
**week (2)**
  21:10;22:1
**what's (11)**
  9:4;23:10,15;30:3,
  5;34:4,7,7;35:10,24;
  36:8
**whole (1)**
  29:8
**who's (1)**
  6:23
**without (3)**
  11:17;22:24;37:15
**WITNESS (30)**
  6:18;10:20;12:25;
  15:1,18;16:13;17:3,
  10;19:2;20:17;21:2,
  22;22:21;24:14;
  26:20;27:17;28:14;
  29:4;32:16;33:2,21;
  37:6;38:2;40:3,20;
  41:7;42:8,12,16;
  43:10
**word (1)**
  28:20
**words (4)**
  7:23;12:4;39:2;
  43:15

**work (3)**
  9:21,25;12:18
**worked (1)**
  40:23
**working (4)**
  9:23,24;11:8,9
**worried (1)**
  20:7
**wrong (1)**
  33:16

## X

**XLD (9)**
  23:19;24:2;25:6;
  30:17;31:9,15;32:3;
  34:13;35:22

## Y

**years (6)**
  9:13,20,21;11:9;
  40:23,24
**Yep (1)**
  17:24

## Z

**Zhang (1)**
  36:11
**Zoom (2)**
  6:3,14

## 1

**1 (4)**
  18:22;19:24;21:11,
  14
**12 (1)**
  39:2
**19th (1)**
  6:4

## 2

**2 (2)**
  29:24;37:9
**2,012,547.95 (1)**
  35:4
**2:59 (1)**
  6:5
**20 (3)**
  9:20,21;40:23
**20_ (1)**
  45:13
**2024 (1)**
  6:4

## 3

**3 (2)**
  25:8;26:22
**3:48 (1)**

39:6
**30b6 (2)**
  18:20,25

## 4

**4 (3)**
  18:19;26:23;27:20
**4:00 (1)**
  38:25
**4:01 (1)**
  39:6
**4:08 (2)**
  44:20,21

## 6

**6:48 (1)**
  38:14

## 7

**7:00 (3)**
  38:15,21,25
**7446 (1)**
  6:7

## 8

**8 (5)**
  17:20,23;21:7;37:8,
  9