UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL GNGH2 INC., <br><br> Plaintiff, <br><br> v. <br><br> XLD CENTURY LLC et al., <br><br> Defendants. | Case No. 2:22-cv-05514-SB-PVC <br><br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

     Defendants XLD Century LLC and XLD Group LLC each applied for and received a $2 million Paycheck Protection Program (PPP) loan. Relator GNGH2 Inc. filed this False Claims Act (FCA) lawsuit, alleging that Defendants were ineligible to receive these loans because they were both ultimately owned by Sichuan Xinglida, a Chinese entity. The Court granted in part Relator's motion for summary judgment, finding that Relator had proved falsity, materiality, and causation, but found a triable issue of material fact as to scienter. Dkt. No. 84. On July 11, 2024, the Court held a bench trial to determine whether Relator could establish the element of scienter. After evaluating the evidence at trial and considering the parties' written submissions, the Court issues the findings of fact and conclusions of law set forth below.

## BACKGROUND

1. Defendants XLD Group LLC and XLD Century LLC are limited liability companies that own the Torrance Marriott and the LAX Marriott hotels, respectively. Dkt. No. 102 at 3–4 ¶¶ 5–6, 27–28.

2. Defendants are a family owned and operated business founded in 2013. Jun Zhang, Defendants' beneficial owner, and his daughter, Jiaqi Zhang, established the corporate structure for Defendants in 2013. Since 2013, Jiaqi Zhang and her brother, Joey Zhang, have served as vice presidents and

1

senior managers of both XLD Group and XLD Century and are responsible for running the daily operations of both Marriott businesses owned by these two companies. *Id.* at 4 ¶¶ 23–24.

3. Jun Zhang owns approximately 99.5 percent of Sichuan Xinglida, a Chinese company based in the People's Republic of China that predominantly owns both Defendants through a chain of subsidiaries. *Id.* at 4 ¶¶ 18–19.

4. The relevant corporate structure is as follows: (a) Sichuan Xinglida wholly owns XLD U.S. Top LLC; (b) XLD U.S. Top LLC wholly owns XLD N.A. Real Estate Inc. and XLD Investment; (c) XLD N.A. Real Estate Inc. owns 95 percent of XLD Group (which owns the Torrance Marriott Hotel); and (d) XLD Investment owns approximately 89 percent of XLD Century (which owns the LAX Marriott Hotel). *Id.* at 5 ¶¶ 29–31.

## Loan Application

5. Enacted as part of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the PPP provided financial assistance to small businesses during the COVID-19 pandemic and associated economic downturn. CARES ACT, PL 116-136, 134 Stat 281, March 27, 2020.

6. In January 2021, Defendants each applied for a $2 million disaster relief loan under the PPP. Dkt. No. 102 at 2–3 ¶¶ 1–2.

7. Jiaqi Zhang completed each application. *Id.* at 4 ¶¶ 21–22.

8. Prior to filling out the applications, Jiaqi Zhang spoke with her in-house certified public accountant (CPA), Jack Chen, about Defendants' eligibility to obtain the PPP loan. Chen informed Jiaqi Zhang that Defendants were eligible under the program to apply for the loan.

9. Chen assisted Jiaqi Zhang in filling out the applications, primarily providing financial information relating to payroll, employees, and revenue.

10. In their respective applications, each Defendant certified that:

    The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of

    China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China (hereinafter, the PRC Certification).

Dkt. No. 102 at 3–4 ¶¶ 9–11, 14.

11. When Jiaqi Zhang submitted the applications on behalf of Defendants, she was aware that Defendants were ultimately owned by Sichuan Xinglida. *Id.* at 4 ¶¶ 25–26.

12. Chen was also aware that Defendants were ultimately owned by Sichuan Xinglida.

### Umpqua Bank

13. Umpqua Bank was the lending bank who administered the PPP loans to Defendants. *Id.* at 5.

14. As the lending bank, Umpqua Bank did not fill in any information on a PPP application that was to be completed by the applicant. *Id.*

15. On or about April 5, 2021, Umpqua Bank sent Jiaqi Zhang an email about XLD Group that asked, among other questions: "[If] the ownership structure involves multiple layers of corporations, partnerships and/or trust please provide a detailed lineage of the ownership until it arrives at the Beneficial Owners (Individual(s)/ Person(s)[)]." Tr. Ex. 5.

16. Jiaqi Zhang replied that XLD Group N.A. Real Estate Development Inc. was the owner and that Jun Zhang owns 100% of XLD Group N.A. Real Estate Development Inc. *Id.*

17. Jiaqi Zhang did not list all levels of ownership between Defendants and Jun Zhang, including the ultimate entity owner, Sichuan Xinglida. *Id.*

Loan Approval

18. Defendants' loan applications were granted, and the government made payments totaling more than $4 million. Dkt. No. 102 at 2–3 ¶¶ 1–2.

19. Both Defendants' loans were eventually forgiven. *Id*. at 3–4 ¶¶ 13, 17.

This Lawsuit

20. Relator filed this action in August 2022, alleging a violation of the FCA. Dkt. No. 1. The government declined to intervene, and the case was unsealed in July 2023. Dkt. No. 14.

21. All parties moved for summary judgment. Dkt. No. 65.

22. The Court granted in part Relator's motion for summary judgment, finding that Defendants' PRC Certification was false because each Defendant is ultimately owned by Sichuan Xinglida. Dkt. No. 84. The Court also found that the PRC Certification was material and caused the government to disburse funds because Defendants would have been ineligible to receive the loans if they had not made the certification. *Id*. at 9–11.

23. The Court determined that a genuine dispute of material fact existed as to scienter. *Id*. Thus, the parties proceeded to a bench trial on this sole remaining issue.[1]

## **LEGAL STANDARD**

False Claims Act

24. A claim under the FCA requires "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1173 (9th Cir. 2016).

---

[1] The Court denied Defendant's motion for summary judgment, which had relied on the public-disclosure bar, because the government opposed dismissal on that ground. *See* 31 U.S.C. § 3730(e)(4) (requiring a court to "dismiss an action or claim under this section, *unless opposed by the Government*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . from the news media) (emphasis added).

4

25. Relator must prove the elements in an FCA case by a preponderance of the evidence. *U.S. ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 540 (9th Cir. 1998).

26. All elements other than scienter have been established as a matter of law.

### Scienter

27. To be liable under the FCA, a person must "knowingly" submit false information. 31 U.S.C. § 3729(a)(1)(A), (B).

28. The FCA defines "knowingly" to mean that the applicant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). Proof of the specific intent to defraud is not required. 31 U.S.C. § 3729(b)(1)(B).

29. A defendant acting in reckless disregard or deliberate ignorance of the falsity of her statements acts with the requisite scienter. *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001). On the other hand, "[i]nnocent mistakes, mere negligent misrepresentations and differences in interpretations will not suffice to create liability." *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (cleaned up).

30. A party relying on a good faith interpretation of the relevant language is not liable under the FCA because her good faith "forecloses the possibility that the scienter requirement is met." *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999).

## DISCUSSION

### Credibility

31. During the bench trial conducted on July 11, 2024, Relator acknowledged that "ultimately this trial is about the credibility of the Defendants' witness, the only witness, Ms. Zhang."

32. The Court carefully evaluated Jiaqi Zhang's testimony and observed her demeanor, which helped to inform the Court's overall assessment of her credibility. While her testimony raised some questions about its reliability, Relator has not convinced the Court—particularly on the very limited record developed—that the questions were weighty enough to discredit the core

substance of her testimony. Accordingly, the Court finds Jiaqi Zhang's testimony to be generally credible—a finding that is dispositive on the question of scienter.

### Scienter

33. Prior to applying for the PPP loan, Jiaqi Zhang consulted her CPA, Chen, about the eligibility requirements for the PPP loan. Jiaqi Zhang reasonably believed that Chen was knowledgeable about those requirements (or at least Relator has not shown otherwise). Chen advised her that Defendants were eligible for the loan. At the time of rendering this advice, Chen was familiar with each Defendant's corporate structure—including that each was indirectly owned by Sichuan Xinglida.

34. Jiaqi Zhang also testified that she believed that if Defendants were ineligible for the loan, Umpqua Bank would inform them. Umpqua Bank was aware of Defendants' corporate structure when they applied for the PPP loans. Tr. Ex. 12.

35. While filling out the PPP applications, Jiaqi Zhang understood the PRC Certification to address whether the applicant owned a Chinese entity, not whether the applicant was owned by a Chinese entity. This reading is incorrect.

36. Although the Court concluded on summary judgment that Jiaqi Zhang misread the PRC Certification, it also noted that the language was poorly written. Dkt. No. 84 at 6. Relator produced no evidence at trial that this poorly written certification (or the statute that it quotes verbatim (15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)), was widely understood at the time Defendants submitted the applications to render companies like them ineligible to receive PPP loans. More significantly, Relator has not convinced the Court that Jiaqi Zhang's reading of the certification was not made in good faith.

37. In short, the Court finds, upon applying the legal standard for scienter set forth above, that Relator has failed to show by a preponderance of the evidence that Jiaqi Zhang made a knowing misrepresentation in the PRC Certifications. More specifically, the Court finds that Relator has failed to show that Jiaqi Zhang's misrepresentation was based on anything other than a genuine misunderstanding of the certification's confusingly drafted language. Thus, Relator has not established the requisite element of scienter, as defined in 31 U.S.C. § 3729(b)(1).

## **DISPOSITION**

38. In light of the above-stated findings of fact and conclusions of law, the Court finds that Relator has failed to carry its burden and is not entitled to recover on its FCA claim.

39. Relator's claim against Defendants is therefore dismissed on the merits with prejudice.

40. The parties shall meet and confer and no later than August 7, 2024 shall file a proposed final judgment that is agreed as to form.

Date: July 31, 2024

_____
Stanley Blumenfeld, Jr.
United States District Judge